141 So. 1

**WIRTH v. ALBERT et al.**

No. 31268.

Feb. 1, 1932.

Rehearing Denied March 30, 1932.

Deutsch & Kerrigan, Milling, Godchaux, Saal & Milling, and E. D. Saunders, all of New Orleans, for appellant.

Edward Rightor, of New Orleans, for A. Albert, Lynn H. Dinkins, and Dr. George A. McDiarmid.

St. Clair Adams, of New Orleans, for Eugene J. Appolonio, Arthur F. Shuey, and Donald Yarbrough.

Terriberry, Young, Rault & Carroll, of New Orleans, for Leigh Carroll.

Harry McCall, of New Orleans, for Henry H. Chaffe.

Charles J. Rivet, of New Orleans, for William T. Coats.

Legier, McEnerny & Waguespack, of New Orleans, for Joseph A. Danna.

George Dreyfous, of New Orleans, for Felix J. Dreyfous.

Sidney Herold, of Shreveport, for Charles Ellerbe.

Montgomery & Montgomery and Harry F. Stiles, Jr., all of New Orleans, for Bush M. Jackson.

Racivitch & Hickerson, of New Orleans, for Fred N. Ogden.

Philip Gidiere, of New Orleans, for Esmond Phelps.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, for John W. Phillips, Marcus Walker, Harold S. Weil, and Herman Weil.

Morris LeCompte, of New Orleans, for Cecil G. Robinson.

Borah & Bloch, of New Orleans, for Dr. Paul H. Saunders.

Harvey Peltier, of Thibodaux, for H. L. Sims.

Dart & Dart, of New Orleans, for Sidney W. Souers.

Guion & Upton, of New Orleans, for Emile Sundbery and John S. Waterman.

Henry & Cooper, of New Orleans, for Charles B. Thorn.

ROGERS, J.

This is an appeal from a judgment dismissing plaintiff's suit on an exception of no cause of action.

On May 16, 1929, plaintiff agreed to purchase from the Mortgage Securities Company, a corporation engaged in buying, selling, and dealing in securities, certain mortgage bonds to be issued by a corporation of Phœnix, Ariz. Plaintiff paid to the Mortgage Securities Company $36,000, the agreed purchase price, and received an interim certificate, which, omitting signatures, reads as follows, viz.:

"No. 3344. $36,000.00
"Interim Certificate issued by Mortgage & Securities Company, New Orleans.

"Upon surrender of this Certificate properly endorsed, we will deliver to Mr. Charles Wirth, Sr., Thirty-six Thousand Dollars, par value of Montgomery Ward Building, First Mortgage 6½% Gold Bonds, Notes, due $7,000 1/1/36, $5,000 1/1/37, $12,000 each 1/1/38, 39 with coupons attached representing all interest accruing thereon from May 15, 1929, until maturity, when, if, and as said securities are issued and delivered to us. When said securities have been received by

the undersigned and are ready for delivery, notice to that effect will be transmitted to the above named holder thereof at his last registered address.

"In the event that we are unable to deliver the securities mentioned herein we will refund the purchase price of this Certificate with interest on same from date hereof to date of said refund at the rate borne by said securities.

"This Certificate and the rights accruing thereunder may be assigned by the holder hereof.

"New Orleans, May 16, 1929.

> "Mortgage & Securities Company,
> By ————
> "Vice-President, Assistant Secretary, Assistant Treasurer.
> "————,
> "Treasurer, Manager Bond Department, Auditor, Cashier."

On the reverse of the certificate appears the following:

"For value received ———— hereby sells, assigns, transfers unto ———— this Certificate and all rights accruing thereunder."
"Dated ———— 192—.
"————.
"In presence of ————
"Received the securities covered by this Certificate this ———— day of ————, 192—."

Before the Mortgage & Securities Company was able to deliver to plaintiff the securities he had agreed to purchase, or other securities satisfactory to him, or, in lieu thereof to repay the money plaintiff had advanced for the purchase of the securities, it was placed in the hands of a federal receiver.

Plaintiff, having failed to obtain any securities or a refund of the purchase price thereof, brought this suit against thirty-one defendants, who were directors, and a few of whom were officers, of the Mortgage & Securities Company, to hold them solidarily liable for the amount paid by him to the company.

Plaintiff's alleged cause of action is set forth in an original petition and a supplemental petition consisting of twenty pages and containing forty-four articles. But the allegations of plaintiff's petitions may be summarized as follows, viz.:

That in May, 1929, plaintiff deposited with the Mortgage & Securities Company, $36,000, the purchase price of certain bonds which plaintiff had agreed to purchase through that company, plus accrued interest; that plaintiff is the holder of an interim certificate evidencing the deposit. That a recognized custom exists among dealers in securities to issue such certificates only after execution of an underwriting agreement assuring delivery of securities. That the bonds in question were to be issued pursuant to an underwriting agreement between the borrower and the Mortgage & Securities Company. That plaintiff was led to believe in this and other dealings with said company that it invariably conducted an independent and thorough investigation of all loans and underwrote them only after being satisfied that such loans were amply secured. That no such investigation was made as to the bonds plaintiff agreed to purchase; no bonds were ever issued and no steps were taken looking to their issuance, and plaintiff never received the bonds, although he repeatedly demanded the delivery thereof.

That shortly after plaintiff had agreed to purchase the securities, and had deposited the price thereof, the Mortgage & Securities Company canceled its underwriting agreement therefor, and, without the knowledge or consent of plaintiff, substituted a new and different agreement with a different borrower, a different amount, rate, security, etc., and thereafter delivery of the bonds plaintiff had purchased was physically impossible.

That the Mortgage & Securities Company, to the knowledge of the defendants, paid dividends out of capital or trust funds to its stockholders through February, 1929, when it had no profits or surplus, and when in fact its capital was impaired, and it was actually in an insolvent condition.

That it is a well-recognized custom of investment companies, sanctioned and recommended by the Investment Bankers' Association of America, of which the Mortgage & Securities Company was a member, to trustee or earmark all funds deposited under agreements to purchase bonds. That under plaintiff's agreement to purchase the bonds, as well as under the custom stated, the funds deposited by plaintiff with the Mortgage & Securities Company were impressed with a trust in plaintiff's favor.

That the Mortgage & Securities Company had made a practice unknown to plaintiff of mingling funds of other persons with its general assets, and that immediately on receipt of the funds deposited by plaintiff, it converted them to its own use.

That the Mortgage & Securities Company was in an insolvent condition at, and for some time prior to, the time the deposit was made by plaintiff, which condition was or should have been known to the defendant officers and directors, who did not so inform plaintiff; but that plaintiff was always advised orally and by written advertisements before and after its agreement to purchase that the company was in excellent financial condition which induced plaintiff to deal with the company.

That the Mortgage & Securities Company consummated in bad faith a number of simulated transactions with banks to conceal its insolvent condition and to lead plaintiffs and others to believe that it was amply solvent, and particularly to conceal from plaintiff the fact that its trust funds were being converted and misappropriated. That the company advertised its capital had been increased a million dollars, assuring great safety to those who looked to it for safe investments, which advertisements were false; and that similar false advertisements were contained in a circular letter addressed to plaintiff and others by the vice president and manager of the bond department of the company.

That the defendants are the officers, directors, and members of the executive committee of the Mortgage & Securities Company, and had actual or constructive knowledge of all the facts alleged, although plaintiff cannot know which of the defendants had actual knowledge and which of the defendants had constructive knowledge of the facts, except on the trial of the case.

That defendants, realizing the fiduciary nature of transactions involving funds of the character deposited by plaintiff with the Mortgage & Securities Company, negotiated with a bank for safeguarding them, and the executive committee of the company to de-

fendants' knowledge actually passed a resolution directing the segregation of such funds, but these arrangements were never consummated.

Plaintiff shows that the Mortgage & Securities Company was placed in charge of a federal receiver, and alleges that it is hopelessly insolvent; that he will probably get nothing in the receivership, and he offers to subrogate defendants to his claims against the receiver.

Plaintiff avers that if he had knowledge of the facts he would never have dealt with the Mortgage & Securities Company, or if he had acquired knowledge of the facts after dealing with the company, he would immediately, and in ample time before the appointment of the receiver, have taken steps to protect his interest.

It is conceded in argument by plaintiff that the money which he paid to the Mortgage & Securities Company was not a deposit in the sense of the articles of the Civil Code on the subject of deposit (article 2926 et seq.). The gravamen of his complaint, as shown by the foregoing summary of the allegations of his voluminous petitions, is, that by the agreement of the parties and in accordance with the custom of the business, the funds placed by him with the Mortgage & Securities Company were not to be commingled with the general funds of the company, but were to be earmarked or immediately invested in securities which would be set aside for his benefit. That in violation of the agreement and custom in question, the funds deposited by him with the Mortgage & Securities Company were immediately appropriated by the company and used by it in the payment of its own obligations, which, in view of its known insolvent condition, operated as a fraud upon the plaintiff. That because of the failure of the defendants, as directors and officers, to see that plaintiff's money was segregated and not misappropriated by the company, they were guilty of such gross mismanagement, misfeasance, and negligence as to become solidarily liable to plaintiff.

But plaintiff does not affirmatively show by whom he was advised orally and by what written advertisements he was informed of the financial condition of the Mortgage & Securities Company, whereby he was induced to enter into the transaction with the company. And his averments that he was misled by the alleged simulated transactions between the Mortgage & Securities Company and certain banks for the purpose of concealing the company's insolvency and by the issuance of alleged false statements and the distribution of alleged deceptive literature by the company are expressly negatived by his further allegations that he had no knowledge of any of these things until more than six months after the appointment of the federal receiver. So that he could not possibly have been misled by things of which he had no knowledge at the time he entered into the transaction with the Mortgage & Securities Company. And these allegations, together with the allegations that the corporation paid regular dividends to its stockholders, are evidently set forth as incidental circumstances supporting plaintiff's charge of gross mismanagement on the part of the defendants, and in an attempt to strengthen his charge of actionable negligence against defendants for their failure to cause the funds paid to the company to be segregated or invested in

securities specifically set aside for plaintiff's account.

The judge of the district court held that it is not every faulty or injurious act that gives rise to an action for its redress, but only those which are expressly recognized as actionable by law; and that while officers and directors are responsible to the corporation for any wrongdoing, resulting in loss or injury to the corporation, no such responsibility attaches under the law in favor of those who may suffer loss or injury in their dealings with the corporation.

Plaintiff has not referred us to any statutory authority for the institution of this suit. But, as we understand the argument in support of the allegations of his petitions, his action is founded on the alleged breach of a fiduciary relationship existing between him and defendants.

Plaintiff alleges that under his agreement and the well-recognized custom of investment companies, which custom was known to him, the money paid by him to the Mortgage & Securities Company became "impressed with a trust," and should have been earmarked, trusteed, or other wise protected, and not mingled with the company's general funds. And plaintiff argues that these allegations indicate that some sort of fiduciary relationship was intended to come into being at the time the transaction was consummated and that defendants by their misfeasance, nonfeasance, and negligence breached this fiduciary relationship, thereby becoming liable in tort to plaintiff.

Defendants point out that plaintiff's petitions are devoid of any allegation showing a specific agreement for the handling of the funds delivered to them; and they contend that plaintiff was in no different situation from that of any person who pays in advance for merchandise purchased for future delivery.

Defendants also contend that under the contract, as evidenced by the interim certificate, which is not subject to variation by parol evidence of custom, the relationship between the parties was that of debtor and creditor and not one of trustee and cestui que trust, and that the Mortgage & Securities Company violated no legal duty to plaintiff (and hence its officers and directors violated none) in mingling plaintiff's money with its general funds.

There appears to be considerable merit in defendants' contentions. But, be that as it may, it is clear that the contract in question was between plaintiff and the corporation and not between plaintiff and the defendants.

It is not sufficient for the plaintiff to show injury, but the injury must be traceable to the defendants' breach of a legal obligation which they owed plaintiff.

But plaintiff does not allege that he had any dealings with the defendants individually, nor does he show that the defendants personally deceived or defrauded him. On the contrary, although he alleges that in his purchase of the bonds from the Mortgage & Securities Company he relied on what he believed to be the general custom in handling funds for such purposes, and depended upon the integrity of the corporation's directors, plaintiff followed the usual course pursued in such transactions and made his purchase

through and after certain conferences with one of the salesmen of the company. And while plaintiff alleges his funds were used for general corporate purposes he does not charge any waste of the corporate funds, nor that any of its funds were stolen, nor that they were applied to the use and benefit of defendants, nor of any other officer or director, nor of any employee of the company.

The act of the Mortgage & Securities Company in mingling with its general funds and using in its business the funds delivered to it by plaintiff, whether done with or without the knowledge of the defendants, was a corporate, and not an individual, act.

█ There was an entire lack of privity between plaintiff and defendants. Defendants as directors and officers of the Mortgage & Securities Company were agents of that company and not of the plaintiff. If in the execution of their agency defendants were guilty of misfeasances or nonfeasances, they are only responsible to their principal, the corporation itself, which alone may sue to enforce their liability for the use and benefit of all concerned.

█ Officers and directors are merely agents of the corporation, and, except for acts of malfeasance, are answerable to it alone. A creditor of a corporation has no right of action against the corporation's agents for gross negligence or maladministration of corporate affairs or omission of duty. Allen v. Cochran, 160 La. 425, 107 So. 292, 50 A. L. R. 459; Ellett v. Newland, 171 La. 1019, 132 So. 761.

For the reasons assigned, the judgment appealed from is affirmed.