For the reasons assigned, the judgment appealed from is amended so as to make the judgment read as follows:

It is ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Joseph Chatman, and against the defendant, Compania de Navegacao, Lloyd Brasileiro, for compensation at the rate of $20 per week for five weeks, beginning May 20, 1931, with 5 per cent. interest thereon from the due date of each installment.

It is further ordered that plaintiff have judgment in the sum of $42.65 for medical expenses.

It is further ordered that the expert fees of Dr. Ane in the sum of $25 be taxed as costs of these proceedings.

As thus amended, the judgment is affirmed.

Amended and affirmed.

### On Application for Rehearing.

PER CURIAM.

Our attention has been directed to the fact that in computing the period of disability we found that the plaintiff was entitled to six weeks and deducted the first week, allowing him a total of five weeks. The record shows that the disability totaled five weeks; consequently, deducting the first week, four weeks should have been awarded.

Our former decree is amended to this extent, and rehearing is refused.

Original decree amended; rehearing refused.

## LEE v. GRIFFITH.

### No. 3745.

Court of Appeal of Louisiana. Second Circuit, Second Division.

March 16, 1932.

For former opinion, see 137 So. 768.

Argued before STEPHENS, TALIAFERRO and CULPEPPER, JJ.

Parsons & Colvin, of Mansfield, for appellant.

Lee & Williams, of Mansfield, for appellee.

CULPEPPER, J.

In the orginal opinion handed down on the 18th of November, 1931, by the First division of this court, there was judgment affirming the judgment appealed from, which judgment was rendered in favor of plaintiff against the defendant in the sum of $228.40, together with 5 per cent. per annum interest thereon from December 31, 1927, until paid, and all costs of the suit.

Upon timely application by defendant-appellant, for a rehearing, same was granted. The case is, therefore, before the court on rehearing.

The sole ground upon which the application is based is expressed in one paragraph which reads as follows:

"That the Court does not pass upon or discuss the law or the facts relating to the defense of the claim for timber on the Southwest Quarter of the Southwest Quarter of Section Thirty-five (35), Township Fourteen (14), Range Twelve (12); but renders judgment upon the facts with reference to other property involved."

It is contended by appellant that the district court erred in recognizing plaintiff's claim for timber cut and removed from said above-described forty acres of land, and that this court erred in affirming the district court's judgment to that extent. Appellant prays that said original opinion and decree of this court, of November 18, 1931, may be

corrected so as to reject plaintiff's demands for the timber cut from said forty-acre tract.

Peter F. Dunn and Elmo P. Lee filed suit December 5, 1928, against defendant for $2,134.19, as damages for timber alleged to have been cut and removed by defendant from one hundred and twenty acres of land in section 1, township 13 north, range 12 west, and the forty acres above described, all belonging to the two plaintiffs in the proportion of a one-half interest each. In the petition the amount of pine timber alleged to have been cut from each of the forty-acre subdivisions is listed separately, and that of oak timber cut is also similarly listed and itemized. There are four forties, three of which are situated in section 1, township 13 north, range 12 west, and the other forty (which is the forty acres under discussion in the rehearing) is in section 35, township fourteen north, range 12 west, and is about one mile, or more, distant from the three forties in section 1.

Defendant pleaded the prescription of one year in bar of the rights of both plaintiffs. The plea as against plaintiff Peter F. Dunn was sustained, but overruled as to Elmo P. Lee. Defendant, answering, admitted cutting certain timber from one of the forties in section 1, viz., N. W. ¼ of S. W. ¼, but avers he did so in good faith as owner under recorded title. He denies generally that he cut any timber from any of these forties alleged upon. Upon the trial of the case there was judgment for plaintiff, Elmo P. Lee, against defendant in the aggregate sum of $228.40, with 5 per cent. per annum interest from December 31, 1927, until paid. Defendant alone prosecuted the appeal.

During the trial plaintiffs abandoned their claims as to timber cut from one of the three forties in section 1, viz., S. W. ¼ of N. W. ¼, due to an error on the part of the estimator of same in his report. This forty being eliminated, there remained only two forties in section 1 and the forty in section 35.

The theory upon which defendant was held liable personally by this court in its original opinion is expressed in the latter paragraph of same, as follows:

"He was president and receiver of the Griffith Company, Incorporated, and directly in charge of its affairs. He attempted to go on the W½ of the SW¼ of Section 1, and show his employees the timber to cut. This act of his, under the circumstances above set forth, was illegal and tortious. What land he pointed out to the employees is not shown, but at the same time they c⁻ᵗ and removed timber from all four of the forties. Defendant by his unlawful act, made himself liable, jointly and in solido, with the corporation he was representing as president and receiver."

■ The law bearing upon this proposition is as follows:

"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act." Revised Civil Code, art. 2324.

"On the clearest principle the officers and agents of a corporation are liable for their own torts, but they are not liable for the torts of the corporation in which they do not participate." Thompson on Corporations, vol. 7, § 5437, p. 344.

It is defendant's contention that he did not participate in nor direct the cutting of any timber on the forty acres in section 35; and that he had no knowledge that any agents of W. J. Griffith Company, Inc., for which he was president and receiver, were cutting or had cut any timber from said forty. It is contended that the evidence in the record nowhere shows such to have been the case, and that it would have been incumbent upon plaintiff to show it if such were true. If the testimony fails to show that defendant participated in, or caused or encouraged any one else in, the cutting of the timber from said forty, he of course cannot be held liable.

"An officer of a corporation does not incur personal liability for its torts solely by reason of his official character." 7 R. C. L. § 486.

"An officer or director of a corporation is not liable for its torts when he has not participated therein, or had knowledge of, or given consent to, the act or transaction." Corpus Juris, 14A, § 1955, p. 176.

■ We have again reviewed the testimony in the record on this particular point, and as relating to the timber cut from the S. W. ¼ of S. W. ¼ of section 35, township 14 north, range 12 west. The nearest plaintiffs have connected this defendant with the cutting of timber from this forty acres in his own admission on the witness stand that he, while president and receiver of the W. J. Griffith Company, Inc., knew and had knowledge that the company acquired certain timber from Robert Clinton on a tract of land adjoining the forty in question and knew the Clinton timber was being cut and removed. J. C. Griffith, and not defendant, made the trade with Clinton for his timber. Defendant, W. J. Griffith, admits that this Clinton timber was cut at the direction of the officers of the company and that he was one of the officers, but says he did not personally supervise the cutting. It seems that J. C. Griffith, with the assistance of a Mr. Lloyd, directed the cutting of this timber. Defendant states that he himself had no personal knowledge of the cutting, neither did he direct the operations. In the cutting of the Clinton timber it appears that those so engaged went across the line onto this S. W. ¼ of S. W. ¼ of section 35, and cut the timber in controversy thereon through error. This is the explanation given

by defendant as to the cause of its being cut.

Witness Albert Yearling, who resided in that vicinity, testifying for plaintiff, stated that he saw the cutting operations, saw Mr. Lloyd apparently in charge, but never at any time did he see defendant anywhere around. Similar testimony was given by Frank Thomas, another witness for plaintiff. These operations were at least a mile distant from those which defendant admitted he carried on or directed on different lands located in section 1, township 13, range 12.

We now think, after a careful review of the testimony, that the lower court was in error in holding defendant liable for the timber cut from this particular forty, and likewise this court erred in so holding.

The amount awarded for the value of timber removed from this forty appears to be the sum of $78.75, which amount should be deducted from the original judgment. Counsel for plaintiff has frankly admitted, in oral statement before the court following argument by opposing counsel, the error complained of, and agrees that the judgment should be reduced by the amount stated.

For these reasons, therefore, the opinion handed down on the original hearing is annulled and set aside, and it is now decreed that the judgment appealed from be amended by reducing the amount for which same was rendered from $228.40 to the sum of $149.65, with five per cent. per annum interest thereon from December 31, 1927, until paid, and as thus amended said judgment be affirmed. It is further decreed that plaintiff pay costs of appeal.