107 So.2d 496 (1958)
Mrs. Lenora Robison ADAMS, Ind. and for the Use and Benefit of the Minors, Hugh Dean Adams et al.
v.
FIDELITY AND CASUALTY COMPANY OF NEW YORK et al.
No. 4682.
Court of Appeal of Louisiana, First Circuit.
November 21, 1958.
Rehearing Denied January 5, 1959.
Writ of Certiorari Denied February 16, 1959.
*497 Fusilier & Vidrine, Ville Platte, Jos. A. Gladney, Baton Rouge, for appellants.
Breazeale, Sachse, Wilson & Hebert, Dale, Richardson & Dale, Baton Rouge, for appellees.
ELLIS, Judge.
On the 18th day of May, 1956, Herman Adams was employed by the Offshore Company and was fatally injured in an accident in the course of his employment. On May 17, 1957 suit for damages was filed by the surviving widow, individually, and for the use and benefit of the three minor children of decedent, against the hereinafter named individuals and their alleged insurers under the authority of our Louisiana Workmen's Compensation Act, LSA-R.S. 23:1101, Sub. Part E, Rights Against Third Person, to-wit:
"When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.

*498 "Any employer having paid or having become obligated to pay compensation under the provision of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his defendant."
The parties sued, with the exception of their alleged insurers, and the basis upon which the suit is founded against them is shown in the following quoted articles of plaintiff's petition, to-wit:
"9. That the decedent was doing work in the Yards for said Employer when he was wrongfully killed.
"10. That while he was descending from a tank to the ground, via a large stack of steel, a large iron reel fell on top of him, fatally crushing his head and body.
"11. That the iron reel, weighing over five hundred (500) pounds had been placed on the top of the stack of steel and left there for a period of several months in a perilous and dangerous position, altho the decedent was not aware of said danger prior to his fatal accident.
"12. That the decedent's death was due to the negligence of defendant, Bernard G. Colley, because of the following reasons:
"1. That said Bernard G. Colley was Superintendent of all of the trucks, tractors and vehicles for the Offshore Company and/or Southern Production Company, Inc.
"2. That in his capacity as an Executive Officer, (Stockholder) or Director of all the trucks of said Corporations, he had one of the vehicles under his control to place the iron reel, causing the fatal injury to defendant, upon the stack of steel in the Yards, near the Warehouse, where it remained for several months, in a dangerous and perilous position, due to the nature, size, weight and shape of the reel, until it fell on decedent.
"3. Therefore said Bernard G. Colley was negligent in placing and leaving said reel on the stack of steel until it fatally injured decedent, which negligence was a proximate cause of the death of decedent, and resulting losses to petitioners.
"13. That the decedent's death was due to the negligence of defendant, S. J. Parker, because of the following reasons:
"1. That said S. J. Parker was in charge of the Warehouse and the adjoining Yards of the Offshore Company and or Southern Production Company, Inc.
"2. That in his capacity as an Executive Officer (Stockholder) or director of the principal Warehouse and Yards of said Corporations located in East Baton Rouge Parish, Louisiana, at Arlington, about two (2) miles South of the Louisiana State University Campus; that he had gone by the stack of steel on which the reel had been placed in a dangerous and perilous position, on numerous occasions, and, being the Executive Officer or Director in charge of the Warehouse and adjoining Yards he did see or should have seen the reel where it had remained for several months because he had gone by the stack of steel almost daily.
"3. Therefore, it was negligence on the part of the said S. J. Parker to allow the said reel to remain on the stack of steel, until it fatally injured decedent, whose duty it was to provide a safe place for decedent to work; that his negligence was a proximate cause of decedent's death and resulting losses to petitioners.
"14. That the decedent's death was due to the negligence of defendant, *499 John P. Carpenter, because of the following reasons:
"1. That said John P. Carpenter was employed as the Safety Director over all of the operations of the Offshore Company and Southern Production Company, Inc., its Warehouse and adjoining Yards located in the Parish of East Baton Rouge, State of Louisiana.
"2. That in his capacity as an Executive Officer, (Stockholder) or Director of Safety of said Corporations, that he did see or should have seen the reel which had been negligently placed on the stack of steel in a dangerous and perilous position, as he had inspected the Yards of many occasions while said reel remained in its dangerous position.

"3. Therefore it was negligence on the part of John P. Carpenter, Safety Director, Executive Officer or Stockholder of said Corporations to fail to have the reel removed from the top of the high stack of steel as it was his duty to do so in the course of his duties with The Offshore Company or Southern Production Company, Inc., and that said negligence was a proximate cause of decedent's death and resulting losses to petitioners.
"15. That the decedent's death was due to the negligence of defendant, William Hinson Moore, because of the following reasons:
"1. That said William Hinson Moore was Vice President or Assistant to the General Manager in charge of all of the operations of The Offshore Company or Southern Production Company, Inc., and he personally had knowledge of said Corporations.
"2. That in his capacity as an Executive Officer, (Stockholder) or Director, as the Vice President and/or Assistant to the General Manager it was his duty to know that the said reel had been placed on the high stack of steel and left in a dangerous and perilous position; that he had gone by the same and did see it or should have seen it dangerously and perilously placed on top of the high stack of steel where it had remained for several months.
"3. Therefore the said William Hinson Moore was negligent in not having the reel removed from the dangerous position on top of the high stack of steel as it was his duty to do so before it fatally injured the decedent; which negligence was the proximate cause of the decedent's death and resulting losses to petitioners.
"16. That the decedent's death was due to the negligence of defendant, Theo S. Stoneman, because of the following reasons:
"1. That the said Mr. Theo S. Stoneman was the President and General Manager over all of the operations of the Offshore Company which has its principal office in the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana, and especially of the Warehouse and Yards located at Arlington, approximately two (2) miles South of the Louisiana State University Campus in said Parish and State.
"2. That in his capacity as the President and General Manager, Director, Executive Officer and Stockholder, it was his duty to know that his Superintendent, Bernard G. Colley had been instructed to have the reel placed on top of the high stack of steel; and to know that the said reel had been placed there by Bernard G. Colley with one of the vehicles of the Offshore Company or Southern Production Company, Inc., by the said Bernard G. Colley where it remained in a dangerous and perilous position for several months.
"3. Therefore, it was negligence on the part of the said Theo S. Stoneman *500 in his capacity as President, General Manager, Executive Officer, Director and Stockholder of the Offshore Company in failing to provide a safe place for decedent to work; and it was further negligence on his part in failing to have the reel removed from the top of the stack of steel where it was left in the rickety position, both dangerous and perilous, as result of which it fatally injured the decedent; and his failure to have said reel removed to a safe location was a contributing and proximate cause of the death of decedent and resulting losses to petitioners."
The defendants filed exceptions of no cause or right of action which was sustained by the lower court and plaintiff's suit dismissed. It is from this judgment that the plaintiffs have appealed.
Counsel for appellees and appellants agree that under LSA-R.S. 23:1032 of our Louisiana Workmen's Compensation statute the rights and remedies granted to an employee or his dependent on account of personal injury for which he is entitled to compensation shall be exclusive of all other rights and remedies of such employee or his dependents. Under the settled jurisprudence of this state this section of the law has been interpreted to mean that the rights under the act are exclusive as to suits against the employer.
The defendants contend that the petition of the plaintiffs does not set forth a cause or right of action against the defendants as it affirmatively alleges that they are officers of the corporation employer and that the failure of the defendants to perform the duties which are alleged as a basis for the cause of action on the part of the latter arose out of their positions as officers of the corporation, and, hence, they were only answerable to the corporation for failure to perform such duties; that the defendant officers were, therefore, guilty according to the allegations of plaintiffs' petition only of a non-feasance, or a failure to perform duties owed to their corporation-employer; that under LSA-R.S. 23:1101, supra, which plaintiffs contend is the basis of their right of actions against the defendants, a petition must set forth facts which plainly reveal either an active, affirmative negligence, or a willful and deliberate action, on the part of a defendant.
In support of the basis of the exception of no cause or right of action, defendants argue that:
"The petition discloses on its face that it is at variance with the policy of the Workmen's Compensation Act under which industrial accidents are made compensable regardless of negligence, and assumption of risk and the fellow-servant doctrine are abolished and the remedy against the employer (as well as those who are the alter ego of the employer) is made exclusive. If corporate officers (who are not charged with any deliberate act, but are charged with failure to act or failure to provide a safe place to work) can be held personally liable in tort by virtue of their duties as `officers (stockholders) or directors' of particular spheres of managerial responsibility, then the policy of the Act is set at naught. The Act was a compromise to impose absolute liability on the employer for injuries in the scope of employment and the Act could not have been intended to mean that the injured employee should have (1) his action against the employer; and (2) a second remedy in tort against the corporate officers, managing directors or superintendents as well when something goes wrong. Plaintiff's action means just that. It would mean that in every case of an industrial accident, a second and additional remedy could be asserted because the cases would be rare indeed in which some officer could not be charged with failure to do something or failure to know that the duties of subordinates were not being properly performed, or that safe places to work or appropriate safety measures were not being supplied."
In support of the argument that a director, officer or agent of a corporation is *501 not responsible to third persons for mere inattention, negligence or mismanagement amounting to non-feasance or a breach of duty owed to the corporation as such, the defendants cite: 19 C.J.S. Corporations § 846, p. 274; Wirth v. Albert, 1932, 174 La. 373, 141 So. 1; McGuire v. Louisiana Baptist Encampment, 1st Cir.Court of App. 1941, 199 So. 192; La Parie v. Totora, La. App.Orleans 1953, 62 So.2d 658; Ellett v. Newland, 1931, 171 La. 1019, 132 So. 761; Delaney v. A. Rochereau & Co., 1882, 34 La.Ann. 1123; Lee v. Griffith, 2nd Cir. Court of App. 1932, 140 So. 142.
In 19 C.J.S. Corporations § 845, p. 271, we find the following:
"Broadly speaking a director, officer, or agent of a corporation is not, merely by virtue of his office, liable for the torts of the corporation or of other directors, officers, or agents.
"He is, however, as in the case of torts committed by agents generally, discussed in Agency § 220, liable in damages for injuries suffered by third persons because of his own torts, * * * regardless of whether or not the corporation is also liable. He cannot escape liability on the ground that in committing the tort he acted as a director, officer, or agent of the corporation, or on the ground that the corporation may also be liable. As in any case, it is, of course, necessary that the facts show the commission of a tort before the officer may be held liable therefor."
Again in the same volume on page 273 under the heading of "Nonfeasance", § 846, we quote:
"a. Doctrine Stated
"It is frequently held that directors, officers and agents are not liable to third persons suffering injury or damage as a result of nonfeasance or a breach of duty owing to the corporation alone.
"The rule which makes directors, officers, and agents of a corporation liable for their torts to persons who suffer injury or loss thereby has been held to refer to malfeasance or misfeasance or positive wrong. In the absence of a constitutional, statutory, or charter provision imposing liability a director, officer or agent is not responsible to third persons for inattention, negligence, or other mismanagement amounting merely to nonfeasance and a breach of duty owing to the corporation alone. Nothing short of active participancy in a positively wrongful act intendedly and directly operating injuriously to the prejudice of the party complaining will give origin to individual liability.
"The doctrine of nonfeasance has in its terms been criticized and liability on the individual imposed or withheld depending upon whether or not there was a duty owing to the injured party by the officer or agent. If the act complained of constitutes a breach of duty owed directly to the third person, there is personal liability. If such act consists only of a breach of duty which the officer or agent owes to the corporation, there is no such liability."
We agree with defendant's argument that the breach of a legal obligation by corporate officers due and owing only to the corporation, whether it be misfeasance, malfeasance or nonfeasance, is no concern of a third party and does not give rise to any cause of action by the latter, against corporate officers. On the other hand, an injury suffered by a third party which is due to the breach of a legal obligation which the corporate officer or officers owed to the third party, whether it also involved the breach of a duty due to the corporation, would give rise to a cause of action against the corporate officers for the breach of such legal obligation. It would matter not whether the breach of a legal obligation due and owing *502 by a corporate officer to a third party (which would include a co-employee) was the result of misfeasance, malfeasance or nonfeasance. This was recognized in Wirth v. Albert, supra, in which the court stated [174 La. 373,141 So. 4]:
"It is not sufficient for the plaintiff to show injury, but the injury must be traceable to the defendants' breach of a legal obligation which they owed plaintiff."
In the case of McGuire v. Louisiana Baptist Encampment, supra, the court found as a matter of fact that the defendant, Rev. Keegan, had not by virtue of his position, or individually, breached any legal obligation which he owed to the deceased son of the plaintiff that caused or contributed to the drowning of the young man. Wirth v. Albert, supra, was one of the cases relied upon and cited by the court.
Ellett v. Newland, supra, involved the grossest kind of malfeasance by the defendant in receiving the deposits of the plaintiffs when they knew the bank was insolvent or in failing circumstances. The basic and underlying principle of law upon which the defendants were held liable was the breach by the latter of a legal obligation which they owed to the plaintiff. The court stated it as follows [171 La. 1019, 132 So. 762]:
"The officers and directors owe to the public the duty of refusing to accept deposits when they know that a depositor will be injured and damaged."
We do not believe that any of the authority cited by the defendant can be interpreted as holding the corporate officer free from any liability for the violation of a legal obligation due and owing to a plaintiff where the latter's injury is traceable to such breach by the corporate officer. Whether the breach is due to misfeasance, malfeasance, or nonfeasance, is immaterial and beside the point. Just so there is the breach of an individual obligation by the corporate officer due to a party and as a result of such a breach, the latter is injured, would be sufficient to give rise to a cause of action by the injured party against the corporate officer.
We can see no valid or logical reason for denying a plaintiff a cause of action for nonfeasance, as well as for misfeasance and malfeasance, if the nonfeasance was an omission by the defendant to perform a legal duty which he owed the party allegedly injured and because of his failure to act the party was injured, whether the guilty defendant be a director, officer or agent.
The law is well settled that a third party may include a director, officer, or agent and that where the facts reveal an active negligence or wilful or deliberate tort, such third party is personally responsible. See Lee v. Griffith, supra, Kimbro v. Holladay, La.App., 154 So. 369, Vidrine v. Soileau, La.App., 38 So.2d 77.
We particularly note the quote in defendant's brief from 19 C.J.S. page 273 under the heading of "Nonfeasance," Sec. 846, to-wit:
"The doctrine of nonfeasance has in its terms been criticized and liability on the individual imposed or withheld depending upon whether or not there was a duty owing to the injured party by the officer or agent. If the act complained of constitutes a breach of duty owed directly to the third person, there is personal liability. If such act consists only of a breach of duty which the officer or agent owes to the corporation, there is no such liability." (Emphasis added)
The test as laid down after a lengthy discussion in the case of Washington v. T. Smith & Son, La.App., 68 So.2d 337, is the correct one to be applied in testing the sufficiency of plaintiff's petition in the case at bar. For a proper understanding of the issues, reasons and conclusions of the court in the cited case we feel justified *503 in a full discussion of and quotation from that case.
In the case of Washington v. T. Smith & Son, supra, the facts are that a crate of aircraft parts weighing 3300 pounds and which had been consigned to the French Government was brought to the public docks in New Orleans by T. Smith & Son, Inc., who were engaged in the stevedoring business and delivered the same to E. S. Binnings, Steamship agent, for transshipment by the French Lines. The crate was too high to go through a door, so upon the approval of Binnings' employee it was placed on the inner apron outside the closed portion of the wharf. It was positioned so as to lean against the outside of the galvanized iron wall, enclosing this section of the wharf. This crate with another large crate remained where it had been placed until 11 days thereafter when it fell upon the plaintiff, who was an employee of Hogsett Company, Inc., and was engaged as a member of a "gang" engaged in unloading cars at the wharf. Binnings was sued along with T. Smith & Son, Inc. Plaintiff relied upon the doctrine of res ipsa loquitur which the court held could not apply to T. Smith & Son, Inc., in the absence of proof by the plaintiff that there was no intervening occurrence between the time of the placing of the crate on the apron and the happening of the accident, which might itself have been the cause of the crate falling. However, the court applied this doctrine insofar as Binnings was concerned and due to the fact that the latter could not rebut the presumption of negligence judgment was rendered against him. In the opinion, our learned brothers of the Orleans Circuit took full cognizance of the doctrine as expressed in Delaney v. A. Rochereau & Co., 34 La.Ann. 1123, which was one of the leading cases in Louisiana decided by our Supreme Court in 1882 and cited and relied upon by the defendants to sustain their position along with the other cases which have heretofore been cited and quoted from as sustaining the same position. The court, in concluding and holding that "We cannot absolve Binnings merely because he was someone's agent" [68 So.2d 346], stated:
"In some jurisdictions the agent is not accountable to third persons for nonfeasance, but is for misfeasance. However, the weight of modern authority is that no distinction is recognized, as far as the accountability of the agent is concerned, between acts of misfeasance and nonfeasance. See Haynes' Adm'rs v. Cincinnati, N. O. & T.P.R. Co., 145 Ky. 209, 140 S.W. 176, 180, wherein the court said:
"`It is not at all material whether his wrongful or negligent act is committed in an affirmative or willful manner, or results from mere nonattention to a duty that he owes to third persons, and that it is entirely within his power to perform or omit to perform. There are innumerable situations and conditions presented in the everyday affairs of life that make it the duty of persons to so act as not to harm others, and when any person, whatever his position or relation in life may be, fails, from negligence, inattention, or willfulness, to perform the duty imposed he will be liable. Ellis v. Southern Railway Co., 72 S.C. 465, 52 S.E. 228, 2 L.R.A.,N.S., 378. * * *'
"Some courts have held that an omission on the part of an agent might amount to a misfeasance. E. N. Emery & Co. v. American Refrigerator Transit Co., 194 Iowa 926, 189 N.W. 824; Ryan v. Standard Oil Co. of Indiana, Mo.App., 144 S.W.2d 170; Lambert v. Jones, 339 Mo. 677, 98 S.W.2d 752; Franklin v. May Department Stores Co., D.C., 25 F.Supp. 735.
"A note set forth in Ward v. Pullman [Car Corporation], 131 Ky. 142, 114 S.W. 754, 25 L.R.A.,N.S., 345, recites:
"`It is very interesting to note that, among the decisions passing upon the *504 question since the preparation of the earlier note, not a case which adopts the view that the word "misfeasance" as used in connection with this rule may include acts of omission as well as commission has held the servant not liable for the omission alleged; so that, while many cases do state that a servant is not liable for his nonfeasance, such statements are but little more than dicta, for the particular negligence in question, though an omission, was held to be a misfeasance, and not a nonfeasance, the courts reach what is apparently a sound conclusion, notwithstanding the attempt to sustain a distinction which is very intangible, to say the least.'
"In commenting upon Delaney v. [A.] Rochereau [& Co.], supra, Mechem, in his `Outlines of the Law of Agency' (1952), page 235, observes:
"`§ 348The view stated * * * has not become obsolete. It is still true that one is not liable to another to whom he owes no duty. There has, however, been a gradual expansion of the duty concept as a matter of tort law. Modern cases tend to hold that one who takes control of a piece of property or a situation thereby comes under an obligation to use reasonable care to see that the property or situation does not become harmful to third parties. As put in Baird v. Shipman the agent is under a "common-law obligation to so use that which he controls as not to injure another." Thus in a leading case it was held that a railroad section foreman, whose duties included keeping the right of way free of inflammable materials, was liable to a third party whose property was destroyed by fire in consequence of a foreman's failure to do his duty.'
"Prof. Seavey, late of the Tulane Law School, at the conclusion of his interesting article `Liability of an Agent in Tort' (1916), So.L.Q., Vol. 1, states:
"`* * * A large part of the world's work is to-day carried on by means of various agencies. More and more we rely upon the performance of those who are employees. Our lives, property and enjoyment are in their hands. The principals are often in distant places. In many cases if there is no relief against the agent, there is none at all; in any event the remedy through the principal is a circumlocution. Going with the extension of the rule of respondeat superior, based on the power to control, should be a recognition of the fullest personal and direct responsibility of the agent, the one in actual control. The statement that "no man increaseshis obligations to strangers by becoming an agent" is not good in law, sound in justice, nor satisfying in its economic effects.'
"Everyone is under the obligation, whether his role be that of an agent or owner, of not allowing things subject to his control to injure another, either because of active or passive negligence, and whenever property in one's control becomes dangerous to third persons, there is the duty to act affirmatively. It matters not whether active or passive negligence causes the ultimate result. As commented in the above-quoted article, does it differ, in testing the tort liability of an engineer at the throttle and in control of a boiler, whether he ties down the safety valve or fails to untie it; whether he `affirmatively' injures the boiler or continues to use a defective one? And, would it not be absurd to hold that a servant placed at the open door of a tiger's cage, whose duty it is to close the door when there is any indication that the tiger will escape, and who goes to sleep, is not liable to a member of the public injured through the escape of the tiger, because he was guilty only of `nonfeasance'?
"Binnings' duty to see to it that the property in his custody, as agent of *505 the owner, did not cause injury to a third person, was independent of and unconnected with any obligations or duty which were owed by him to his principal. The duty as to the one is imposed by law, and to the other the duty flowed from the contract of agency. An injured third party's right to recover for the agent's negligence cannot be said to depend upon any contractual liability to the principal. By not attending the crate, and in failing to see that it was properly and securely braced against the wall, if this can be said to have been the cause of the accident, Binnings is nonetheless exposed to liability for plaintiff's injuries and consequent damages."
It would appear that the Washington case in reality followed the doctrine as stated in American Jurisprudence, Vol. 13, p. 1023, § 1092, which we quote:
"§ 1092. Negligence. As in the case of agents generally, some of the authorities, particularly the earlier ones, have attempted to work out the liability of a director or officer of a corporation for negligence resulting in the injury of a third person `including employees of the corporation' by laying down the rule that a director or officer of a corporation is liable to third persons for injuries caused by his misfeasance or malfeasance, but is not liable for such injuries, if due to nonfeasance, for in such case the director or officer is neglecting a duty which he owes merely to the corporation. In the last analysis, however, the liability of a director or officer of a corporation to third persons for negligence is not a matter to be settled by a superficial terminology of the acts done as malfeasance, misfeasance, or nonfeasance. Such a method is an attempt to consider the violation of the duty before the duty itselfthat is, it is an attempt to lay down the rule that because there was a breach of duty by reason of misfeasance or malfeasance therefore there was a duty to the third person, but that if the act is one of omission or nonfeasance, therefore there was not a duty to the third person. This surface terminology has led to such confusion in the cases and to different results upon facts substantially identical. This method of determining liability has been repudiated as to agents generally by the better-reasoned authorities and the text writers, and is not the proper test as to directors and officers of corporations.
"The fundamental and proper method of approach is to inquire whether the director, officer, or agent has failed to perform some duty which he owed to the person claiming to be aggrieved. In the determination of such liability, therefore, the questions to be decided are: (1) Was there any duty on the part of the director, officers, or agent to use care not to injure the third person involved? (2) Did the act or omission of the director, officer, or agent constitute a breach of that duty? In accordance with these inquiries, the more direct and fundamental rule, accepted in principle at least by all the authorities, is that a director, officer, or agent of a corporation is liable to third persons for injuries proximately resulting from his breach of duty to use care not to injure such persons. Whether that breach is one of omission or commission. On the other hand, a director, officer, or agent of a corporation is not liable for injuries to third persons if he has been guilty of no act or omission causing or contributing to such injury or if he owes no duty to such third person to use care, such as where the breach of duty complained of is one owing only to the corporation.
"§ 1093.Application of RulesApplying the rules of the foregoing section, the manager of a corporation in charge of its work in constructing a building is personally liable for negligent *506 failure to erect a scaffold which is needed to protect persons near the walls. The same is true of an officer or agent of a corporation in general charge of real property under a duty to keep it in repair, and his failure to do so is negligence on his part which may render him liable to third persons by reason of the defective condition of the premises.
"A managing officer of a corporation which is engaged in the manufacture for general consumption of an article dangerous to use has been held personally liable for injury to a consumer by its use, if he knew of its dangerous character and actively promoted its manufacture and sale. Similarly, an officer or agent of a corporation is personally liable where he negligently places dangerous articles on the corporate premises and a third person is thereby injured. The liability of the officers of a corporation for negligence in storing giant powder in violation of law depends upon their exercise of reasonable diligence in the control and supervision of the business. It is the duty of the directors of a corporation dealing in explosives to exercise such reasonable supervision over the management of their company's business as will result in the observance of the utmost care on the part of the subordinates who direct or handle the explosives. However, the president of a corporation who is also a director is not personally liable for injury to an employee through the explosion of a boiler which is part of the plant of the corporation, if he has no active supervision of the plant, which is under control of persons employed for that purpose, of whose negligence he has no notice."
The Washington case criticized the holding and reasoning used in Delaney v. A. Rochereau & Co. and followed the rule stated in the above quoted section of American Jurisprudence as being the fundamental and proper method of approach, viz., to inquire whether the director, officer, or agent has failed to perform some duty which he owed to the person claiming to be aggrieved, and if so, it matters not whether the breach is one of omission or commission. We believe this rule is based upon sound legal principles and will apply it to the facts of plaintiff's petition as a test of its sufficiency. This case is also particularly apposite to the case at bar in that it lays down the proper legal principles to be followed in testing the liability of a third party defendant under LSA-R.S. 23:1101, Sub Part E, whether he be an officer, director or untitled co-employee of the common corporation employer, as well as the test of liability in cases where a third party plaintiff is suing an agent, officer, or director of a corporation employer, for an alleged negligent breach of duty "whether that breach is one of omission or commission."
The articles of the petition necessary for a decision of the questions before the court have heretofore been quoted and an examination reveals that the decedent was descending from a tank by way of a large stack of steel when an iron reel weighing more than 500 pounds fell on him fatally crushing his head and body; that this iron reel had been placed on top of the stack of steel and left there for a period of several months in a perilous and dangerous position; the details of the perilous and dangerous position are not alleged although it is alleged that the decedent was not aware of the danger prior to his fatal accident.
Article 12 of the petition, supra, contains the charge of negligence as alleged by plaintiffs against Bernard G. Colley, one of the defendants, and upon which plaintiffs expect or are asking a judgment against him. This article alleges that Colley was superintendent of all the trucks, tractors and vehicles for his employee and that in his capacity as an executive officer or director of all the trucks, he had under his control the vehicle from which the iron *507 reel was placed upon the stack of steel in the yard, where it remained for several months, in a dangerous and perilous position due to the nature, size, weight and shape of the reel. A generous interpretation of this rather vague allegation is that this reel was placed in a dangerous and perilous position upon the stack of steel from one of the vehicles, which was under Colley's control by virtue of the fact that he was superintendent of all the trucks and tractors and vehicles for his employer. The third allegation under Article 12 does state that Colley was negligent in placing and leaving said reel on the stack of steel, however, this must be interpreted in connection with allegation two, and therefore, we take it that plaintiffs have alleged that Colley placed the reel on the stack by virtue of his right to control the vehicle and employees from which and by whom the reel was unloaded. There is no charge made that Colley was present at the time the reel was unloaded or that he directed the unloading and the placing of the reel which could easily have been done had such been intended. There is nothing to infer that plaintiffs intended to charge Colley with actually and individually being present and placing this reel on this stack, nor do they charge Colley with any knowledge of the dangerous and perilous position of this reel.
We fail to see wherein plaintiffs have stated a cause of action against Colley merely because he had under his control as superintendent of trucks the vehicle which hauled the iron reel to the yard and from which it was placed on the stack of steel, not by Colley or in his presence, for there is no such allegation of fact. He was not guilty of any negligence by any misfeasance or malfeasance under the settled jurisprudence of Louisiana as announced in the Delaney v. A. Rochereau & Co. case, nor do the allegations of fact show that he failed to perform any duty which he owed the decedent, viz., to use care not to injure him which was the test applied in the Washington case. There are no allegations of fact which show an act or omission by Colley which would constitute a breach of the duty on his part to use care not to injure the decedent.
The petition alleges that the defendant, S. J. Parker, was in charge of the warehouse and the adjoining yard of the Offshore Company and the Southern Production Co., Inc., and that he had gone by the stack of steel on which the reel had been placed in a dangerous and perilous position on numerous occasions and that "he did see or should have seen the reel where it had remained for several months because he had gone by the stack of steel almost daily." and that it was negligence on his part to allow the reel to remain on the stack of steel.
The petition alleges that John T. Carpenter was employed as a safety director over all the operations of the decedent's employer and its warehouse and adjoining yards, and that in his capacity as the director of safety "he did see or should have seen the reel which had been negligently placed on the stack of steel in a dangerous and perilous position, as he had inspected the yard on many occasions while said reel remained in its dangerous position," and therefore he was negligent in failing to have the reel removed from the top of the high stack of steel.
Practically the same allegation is made against the defendant William Hinson Moore who it is alleged was vice president and assistant to the general manager and in charge of all of the operations of the decedent's employer and that he had gone by the high stack of steel upon which the reel had been placed and left in a dangerous and perilous position and "did see it or should have seen it dangerously and perilously placed on top of the high stack of steel, where it had remained for several months, and that he was guilty of negligence in not having the reel removed from the dangerous position."
As to the three last named defendants, the petition clearly charges them with having *508 seen this reel upon the stack of steel in a dangerous and perilous position and having allowed it to remain or having failed to have it removed, although each had the authority and the duty to do so.
Using the approach which American Jurisprudence stated is the fundamental and proper method, and the reasoning of the Washington case, the petition charges the three named defendants with having failed to perform a duty which each owed to the decedent and every other employee or person who might pass near this stack of steel or be upon the stack of steel in the performance of his duty as was the decedent for there was a duty on the part of each of these officials to use care and see that due care was used so as not to injure any third person and if they saw the reel on top of the stack of steel in a perilous and dangerous position, which must be taken as true for the purpose of the exception, then their failure to act by allowing the reel to remain or to have it removed constituted a breach of that duty, whether the breach be considered one of omission or commission. The petition shows by its allegations that by virtue of their position they had the authority to have had the reel which they saw in a perilous and dangerous position removed from the stack of steel.
We believe that the better rule is stated in American Jurisprudence supra, in which it is stated therein that "the more direct and fundamental rule, accepted in principle at least by all the authorities, is that a director, officer, or agent of the corporation is liable to third persons for injuries proximately resulting from his breach of duty to use care not to injure such persons, whether that breach is one of omission or commission." In effect, this rule was followed in the Washington case, when the court stated: "Every one is under the obligation, whether his role be that of an agent or owner, of not allowing things subject to his control to injure another, either because of active or passive negligence and whenever property in one's control becomes dangerous to third persons, there is the duty to act affirmatively. It matters not whether active or passive negligence causes the ultimate result."
We therefore hold that the plaintiff's petition states a cause of action as against the defendants S. J. Parker, John P. Carpenter, and William Hinson Moore.
The allegations of plaintiff's petition against the defendant Theodore S. Stoneman failed to state any cause of action as the petition merely charges that he was the president and general manager over all the operations of the corporation and that in such capacity it was his duty to know that Colley, his superintendent, had been instructed to have the reel placed on the high stack of steel and to know that the reel had been placed there with one of the vehicles of his corporation by Colley where it remained in a dangerous and perilous position for several months. There is no allegation of fact charging this defendant with non-feasance, misfeasance or malfeasance nor with any breach of duty toward the decedent or any third person. The exception was properly sustained as to this defendant.
For the reasons given, it is ordered that the judgment of the District Court be affirmed as to the defendants Bernard G. Colley and Theo S. Stoneman. It is further ordered, adjudged and decreed that the judgment of the District Court be annulled and set aside insofar as the exception of no cause or right of action was sustained as to the defendants S. J. Parker, John P. Carpenter and William Hinson Moore. It is now ordered that the exception of no cause or right of action as to these defendants be overruled and the case remanded to the District Court for further proceedings not inconsistent with the judgment of this court.
Affirmed in part and reversed in part.
PER CURIAM.
Counsel for Mrs. Lenora Robinson Adams, et al, has called to our attention *509 that the judgment does not specifically overrule the exception of no cause or right of action as to the Fidelity and Casualty Company of New York.
In order that the judgment be completely clear the judgment is amended as follows:
"It is now ordered that the exception of no cause or right of action as to the defendants, S. J. Parker, John P. Carpenter, William Hinson Moore and the Fidelity and Casualty Company of New York, be overruled and the case remanded to the District Court for further proceedings not inconsistent with the judgment of this court."
Rehearing refused on behalf of both appellant and appellee.