BEER, Judge.
On July 12, 1972, Walter W. Coleman, a 25-year employee at United Rice Milling Products Company (hereinafter, “United”), was acting as foreman during the vacation absence of the regular production foreman —a position he had previously assumed under similar circumstances.
A jam-up or “choke” occurred in the rice-packaging operation necessitating a production shutdown in order to find the cause of the problem and alleviate it. The generally established investigative routine that takes place when a “choke” occurs requires physical entry into a small sunken portion of the plant flooring called a pit which, during normal operations, is covered over by three or four removable boards.
Plaintiff-appellant in his capacity as acting foreman ordered two or more of the boards removed, oversaw the investigation in the pit which revealed that the jam-up was not the result of any problem there and, before proceeding to another part of the plant, apparently instructed one of the plant employees, Jack Johnson, to replace the boards. Plaintiff’s testimony on this point is essentially corroborated by another plant employee Kenneth Jones, but is denied by Johnson, who did not replace the boards.[1]
Moments later, Coleman, still very much involved with attempting to solve the jam-up problem, walked back into the area and fell into the pit. The injury he suffered in that fall is the basis for this tort suit against the president and secretary-treasurer of United and their insurer.[2] Plaintiff-appellant contends that defendants were grossly and wantonly negligent in knowingly maintaining the hazard which has caused his distress.
After extensive pretrial discovery the matter was tried on May 28 and 29, 1974, and for reasons orally assigned, judgment dismissing plaintiff’s suit was rendered on June 4, 1974. We affirm.
The proliferation of so-called executive officer suits has resulted in a number of *647 definitive appellate decisions which need not be here considered in view of the contributory negligence of plaintiff. It would serve no useful purpose for us to burden this opinion with a review of the far-reaching expansions and refinements that have followed in the wake of Adams v. Fidelity and Casualty Co. of New York, 107 So.2d 496 (La.App. 1st Cir. 1958), having concluded as we do that the trial judge was correct in his apparent factual determination of contributory negligence.
Apparently, Mr. Coleman’s preoccupation with finding the cause and solution to the jam-up distracted him from noticing that his alleged order to replace the boards (that he had just previously ordered to be removed) had been ignored. The record fully supports a finding that had Mr. Coleman been looking where he was going he would have seen that the boards had not been replaced and were still stacked up against the wall.
There is no testimony or other evidence in the record to suggest that the defendants knew that, pursuant to plaintiff’s own order, the boards had been removed. However, a more detailed consideration of this aspect of the case is mooted by our agreement with the apparent factual finding of the trial judge on the issue of plaintiff’s contributory negligence.
In order to excuse Mr. Coleman’s lapse, able counsel for appellant cites several cases dealing with sudden emergency. However, the basic concept of that doctrine is that the sudden emergency must be what the name implies — a split-second, decision-making confrontation requiring an immediate selection of alternatives. That is not the factual situation with which we are here concerned. Plaintiff’s decision to walk back across the plant by way of the pit area was not in response to any sudden emergency. The “choke” had long since occurred. The routine of clearing it up was in progress. No sudden emergency— within the definition of the doctrine — existed in such a way as to place any great stress on plaintiff’s selection of his route across the plant floor as he dealt with the problem.
However, in an effort to give full consideration to the appellant’s position we have, notwithstanding the lack of discussion on the subject in the briefs, given serious thought to the line of cases dealing with momentary forgetfulness. Such consideration has led us to Hailey v. LaSalle Parish Police Jury, 302 So.2d 668 (La.App. 3d Cir. 1974) (writ refused, 305 So.2d 540). In that case the court explored the development of the doctrine of momentary forgetfulness and concluded that it does clearly exist in the jurisprudence of this State. The court further concluded that the application of the doctrine does “[excuse] one from the effect of contributory negligence where sufficient cause is shown for the lapse of memory or inattentiveness which results in the accident.” The court went on to hold that the doctrine only applies where there is evidence of circumstances reasonably sufficient to have diverted plaintiff’s mind from the danger in question. Forgetfulness or lapse of memory was not found to be excusable absent adequate diverting circumstances. Finally, the court concluded that the question of adequacy and sufficiency of the diverting circumstances must be determined on a case-by-case basis.
We agree with this entire rationale and apply it here. So doing, we find support in the record for the trial court’s apparent determination that, in the instant case, the doctrine will not be applied. The trial court heard the witnesses, visited the scene and made factual findings which formed the basis for its judgment. Though no written reasons were handed down by the trial court, we conclude that the doctrine of momentary forgetfulness was considered and rejected by the trial court. The record supports such action on the part of the *648 trial court and we do not find it to be manifestly erroneous.
Accordingly, the judgment is affirmed at appellant’s cost.
Affirmed.

. Johnson says that he removed two of the four planks, or boards, on Coleman’s order and leaned them against the wall where they are usually placed when removed. That was where they were (according to Johnson) when Coleman fell into the pit. Johnson denies being told to put them back in place.

. Medical and weekly disability payments were paid under the terms and provisions of the Workmen’s Compensation Act and that matter is not at issue here.