194 So.2d 478 (1967)
Goldman FRUGE, Plaintiff-Appellant,
v.
Warren O. TRAHAN and the Fidelity and Casualty Company of New York, Defendants-Appellees.
No. 1874.
Court of Appeal of Louisiana, Third Circuit.
January 11, 1967.
Rehearing Denied February 15, 1967.
*479 Larry A. Roach, Lake Charles, for plaintiff-appellant.
Stockwell, St. Dizier, Sievert & Viccellio, by Robert W. Clements, Lake Charles, for defendants-appellees.
Before SAVOY, TATE and HOOD, JJ.
HOOD, Judge.
Plaintiff, Goldman Fruge, claims damages for personal injuries sustained by him as a result of an accident which occurred on May 18, 1964. The suit was instituted against Warren O. Trahan and his liability insurer, The Fidelity and Casualty Company of New York. Judgment on the merits was rendered by the trial court in favor of defendant, and plaintiff has appealed.
On the day the accident occurred, plaintiff was working as a foreman for R. D. Heidt Construction Company, Inc., and was in charge of one of their road surfacing jobs in Cameron Parish. His crew was in the process of spreading shell for use on the shoulders of a newly surfaced asphalt road. Defendant, Warren O. Trahan, had a subcontract with Heidt Construction Company to haul shell to the job site for use on that highway. Trahan owned a 1956 Ford *480 dump truck which was being used on this job. At the time of the accident Trahan's truck was being driven by his 17-year-old son, Ernest O. Trahan.
A number of dump trucks were being used to haul shell for this resurfacing project. These trucks arrived at the job site one at a time, and after each truck was in proper position on the highway plaintiff, as foreman, customarily stood alongside the cab of the truck and gave the command for the driver to start moving his truck forward. After the truck began to move forward, plaintiff would pull down the tail gate lever on the truck, causing the tail gate to open and allowing the shell to fall to the road surface behind the moving truck. The tail gate lever is located near the left front corner of the bed of each dump truck, and a short rope is attached to the end of each such lever. The purpose of the rope was to enable the driver to reach back and operate the tail gate lever while inside the cab of the truck. Although that was the sole purpose of the rope, it nevertheless was used by others, such as plaintiff in this suit, who needed to trip the tail gate while outside the truck.
After the tail gate of each truck was tripped, plaintiff ordinarily ran alongside the truck as it was moving, or sometimes he rode on the running board or gasoline saddle tank of the truck, and while so doing he would instruct the driver as to whether to drive faster or slower in order that the shell would be spread evenly. A truckload of shell had to be spread over a distance of approximately 400 feet, so plaintiff usually ran or rode this entire distance while each truck dumped its load of shell. Sometimes, while running or riding, he would continue to hold the rope which was attached to the tail gate lever, although it was not necessary for him to do so, since the tail gate remained open after the lever had once been pulled.
Trahan's truck was equipped with an hydraulic lift bed and with a tail gate lever, this lever being located near the left front corner of the bed of the truck. A rope, about one-half inch in diameter and 14 inches long, was attached to the end of the lever, and usually the person who operated this lever would do so by holding and pulling down on that rope. The running board on the Trahan truck was constructed so that a person could not stand and ride on it while the door of the cab was closed. There was a large gasoline saddle tank attached to the left side of this truck, immediately behind the cab and near the left front corner of the bed, and photographs in the record indicate to us that this tank was of such size and location that a person could ride on it as the truck was moving.
At about 1:00 p. m. on the date of the accident, young Trahan drove his father's dump truck, loaded with six cubic yards of shell, to a designated point at the job site on the highway. Fruge then gave him the order to begin moving the truck forward, and shortly thereafter Fruge tripped the tail gate. After the truck had moved forward 25 to 50 feet, it was determined that the shell was not being spread evenly, so at Fruge's direction the truck was stopped and the tail gate chains regulating the flow of shell were adjusted. The bed of the truck was re-elevated about half-way up, and Fruge then ordered the driver to "take off." Plaintiff ran alongside the truck for several feet after it began moving forward before he pulled on the rope which was attached to the tail gate lever. After pulling on the rope and tripping the tail gate, however, plaintiff either fell or was "jerked up" by the rope and his body struck the left side of the truck. There is a conflict in the evidence as to whether the accident occurred immediately after the tail gate was tripped, or whether the truck continued to travel for some distance after the lever had been pulled and before the accident occurred. At some time after the tail gate was tripped, however, the rope which plaintiff had been holding broke, and Fruge fell on the gasoline saddle tank of the truck. He attempted to cling to this tank, but was unable to do so and he then fell to the *481 ground in front of the rear wheels of the truck. The truck was brought to a stop after the wheels had rolled partially over his right leg and thigh. He sustained serious injuries as a result of this accident.
Plaintiff contends that the driver of the truck was negligent in failing to keep the vehicle under proper control and in failing to maintain a proper lookout. He also contends that the owner of the truck was negligent in failing to provide a qualified operator for that vehicle, in failing to maintain a properly equipped truck, and in failing to warn plaintiff of the hazardous condition of that vehicle. Alternatively, he argues that he is entitled to recover under the doctrine of "res ipsa loquitur." Defendants deny that the driver of the truck was negligent, or that there were any defects in the truck which could be related to the accident. They contend that the doctrine of res ipsa loquitur is not applicable here. And, alternatively, they plead that plaintiff is barred from recovery because of his own contributory negligence and because he assumed the risk of injury in running alongside the truck while holding the rope on the tail gate lever.
The trial judge concluded that there were no defects in the truck which in any way contributed to the accident, and that the doctrine of res ipsa loquitur is not applicable here. He made no determination as to whether the driver of the truck was negligent, but he held that plaintiff is barred from recovery because he "voluntarily exposed himself to the dangers that existed and having assumed the risk thereof would be barred from recovery by reason of his contributory negligence." Judgment thus was rendered rejecting plaintiff's demands.
We will consider first the question of whether the driver of the truck was negligent. Young Trahan was 17 years of age and he did not have a chauffeur's license at the time the accident occurred. Plaintiff, among other arguments, contends that the defendants were negligent in providing an inexperienced and unqualified driver for that vehicle. The evidence shows that in spite of the boy's age, he had been driving and operating a dump truck for some time. He, in fact, had worked for Fruge on other road jobs before this one, using the same truck, and according to Fruge he had done the work right. Regardless of his age or past experience, however, we agree with the trial judge in his conclusion that "it was not shown that the driver's age or inexperience gave rise to any act of omission or commission that was the proximate cause of the accident." The evidence shows that the driver complied strictly with Fruge's orders in starting his truck shortly before the accident occurred, and that he was driving the truck at the speed indicated by Fruge when the tail gate lever was pulled and when the accident occurred. Trahan estimated his speed at 15 miles per hour, while others stated that the speed was such that Fruge had to travel at a fast walk or a fast trot to keep up with the truck. Immediately after plaintiff was thrown or fell against the side of the truck, however, the brakes of that vehicle were applied, and the truck was brought to a stop within ten feet thereafter. We find nothing in the evidence which tends to show that the driver of the truck failed to maintain a proper lookout or failed to keep the truck under proper control. And we note that in a deposition of plaintiff taken prior to the trial, when asked whether the driver was doing anything wrong in operating the truck, Fruge replied, "I don't think he done anything wrong." The evidence, therefore, fails to show that the driver of the truck was negligent.
The next issue presented is whether there were defects in the truck which caused or contributed to the accident. Plaintiff maintains primarily that the hydraulic lift mechanism on the dump truck was defective, and that this caused the bed of the truck to raise suddenly when he pulled the lever, lifting him into the air and throwing him against the side of the truck. The evidence shows that about three months after the accident occurred the truck was examined *482 by a qualified expert on dump trucks and hydraulic systems, and this expert testified that at that time there were no defects in the hydraulic lift system, that the truck was complete, serviceable and in operating condition, and that it was fully capable of hauling and spreading shell. No repairs, alterations or changes had been made in the truck between the date of the accident and the date of this examination, and the truck, in fact, had been used during that period.
It is true that the rope which was attached to the tail gate lever broke while plaintiff was holding it, and it is possible that plaintiff would have avoided serious injury if the rope had remained intact. As we have already pointed out, however, the principal purpose of that rope was to enable the driver of the truck to operate the tail gate lever while he was inside the cab, and without getting out of the truck to do so. The rope was not designed to support the weight of a man, and there was no reason or need for it to be substantial enough to do that. It was strong enough to serve the purpose for which it was intended, because it had been used for that purpose earlier that day and the tail gate did open when plaintiff pulled on the rope shortly before he was injured. We conclude that the truck owner owed no duty to plaintiff or to anyone else to provide a more substantial rope.
The brakes on the truck obviously were in good working order, because the truck was brought to a stop within a very few feet after the danger became apparent to anyone. There was some testimony to the effect that the motor of the truck had malfunctioned earlier that day, but the evidence shows that it performed properly at the time of and shortly before the accident. The muffler was bad, of course, but this had absolutely nothing to do with the accident.
We agree with the trial judge that the evidence fails to show that there were any defects in the truck which in any way caused or contributed to the accident.
Plaintiff's final and most forceful argument is that he is entitled to recover under the doctrine of res ipsa loquitur. The trial judge rejected this argument, stating that the doctrine is inapplicable because the injured man knows as much about the cause of the accident as anyone else.
For the doctrine of res ipsa loquitur to be applicable, the evidence as to the circumstances connected with the accident must be of such a nature that it creates an inference that the accident was caused by the negligence of the defendant, and with a fair amount of certainty excludes every other reasonable hypothesis as to the cause of such accident. This inference is not drawn merely because the accident occurred or the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty, and that there is no other reasonable or logical explanation for the occurrence of such an accident. Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389; Pilie v. National Food Stores of Louisiana, Inc., 245 La. 276, 158 So.2d 162; James v. Childs, Division of Kroger Company, 166 So.2d 77 (La.App.3d Cir. 1964); Talbert v. Tyler, 121 So.2d 854 (La.App.2d Cir. 1960); and Bougon v. Traders and General Insurance Company, 146 So.2d 535 (La.App.4th Cir. 1962).
In the landmark case of Larkin v. State Farm Mutual Automobile Ins. Co., supra, our Supreme Court said: "All that is meant by res ipsa loquitur is `that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is *483 not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty.'"
Also, in the Larkin case the Supreme Court quoted with approval the following language which it had used in Morales v. Employers' Liability Assur. Corp., 202 La. 755, 12 So.2d 804, to-wit: "It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked." See also Singleton v. Olin Mathieson Chemical Corp., 131 So.2d 329 (La.App.3d Cir. 1961); Turner v. Continental Southern Lines, Inc., 161 So.2d 139 (La.App.3d Cir. 1964); Schulingkamp v. Bolton Ford, Inc., 163 So.2d 161 (La.App. 4th Cir. 1964); Tarbox v. Eason, 179 So. 2d 916 (La.App.2d Cir. 1965); and D'Allesandro v. Edgar Murray Supply Co., 185 So.2d 34 (La.App.4th Cir. 1966).
And, in Pilie v. National Food Stores of Louisiana, Inc., supra, the Supreme Court, after quoting with approval from the Larkin and Morales cases, said: "The Larkin case has been recognized as a `clear and penetrating discussion of res ipsa loquitur by Chief Justice Fournet' and as a sensible appreciation of the real problem in applying it in each case: Do the facts of the controversy suggest negligence of the defendant, rather than some other factors, as the most plausible explanation of the accident? See Malone, Torts, Proof of Negligence, 19 La.L.Rev. 334 et seq. The case has also been recognized as in accord with the general rule that res ipsa loquitur does not apply where the facts are such that an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence. Annotation, 79 A.L.R.2d 6, 68."
In the instant suit plaintiff testified that immediately after he pulled on the tail gate lever rope he was "jerked" upward and toward the truck, into the path of its rear wheels. He contends that the only conclusion which can logically be drawn from that occurrence is that there was some defect in the performance of the truck or in its operation.
Plaintiff's testimony to the effect that he was jerked upward immediately after he pulled the lever is supported by that of some of the witnesses, but it is contradicted by others. One eye witness, for example, testified that he ran ten or twelve steps after pulling the rope before he fell, and others state that he ran a distance of 200 or 300 feet after tripping the tail gate before the accident occurred. The trial judge apparently did not accept plaintiff's version of the facts, because he concluded that the accident occurred "after it (the truck) had traveled some distance from the starting point and while the shell was being spread." We cannot say that the trial judge erred in arriving at that conclusion.
Although plaintiff contends that he was jerked or pulled into the side of the truck by some motion of the truck itself or the dump bed, defendants argue that the evidence shows instead that he simply slipped and fell as he was running alongside the truck. The driver of the truck testified that it appeared to him that plaintiff was trying to jump on the gasoline saddle tank of the truck, and other witnesses testified that shortly after the accident Fruge stated that he "slipped and fell." The trial judge made no determination as to this disputed fact but he concluded that Fruge "was either jerked into the air by the front of the truck bed suddenly lurching upward or he slipped and lost his balance." If Fruge actually slipped and fell, as indicated *484 by some of the testimony, then that clearly would have been the proximate cause of the accident and no negligence on the part of the truck driver could be inferred from that occurrence.
Defendants argue that there could be no inference of negligence on the part of defendant Trahan even if we assume that the truck bed raised suddenly after some of the shell had poured out of it. The evidence shows that the hydraulic mechanism of these trucks is so constructed that the bed will raise or tilt more after some of the shell has been dumped and the load has shifted. Here, some of the shell had been dumped, and one equally logical explanation of why the truck bed may suddenly have raised, assuming that it did, is that the load had shifted.
Plaintiff was about 50 years of age when the accident occurred. He was an experienced employee of Heidt Construction Company, having worked for that company for about 20 years in performing this same type of work. Prior to his employment by Heidt he had operated a dump truck for ten or twelve years, and he was thoroughly familiar with the manner in which the hydraulic lifts on those trucks operate. He also was familiar with this particular truck, because the same truck had been used on other construction jobs where plaintiff had served as foreman, and he had assisted in unloading that truck on two prior occasions on the day the accident occurred. Plaintiff knew, therefore, that the truck bed would raise after the load shifted, and he was aware of the danger involved in holding the tail gate lever rope as he ran by the side of the truck.
We agree with plaintiff that the evidence may be interpreted as showing that the truck bed raised suddenly and plaintiff was jerked or thrown against the side of the truck. But, we think the evidence, with at least equal logic, can be interpreted as showing that plaintiff slipped and fell, through no fault of the driver of the truck. Also, even if it is assumed that the truck bed raised suddenly, it is reasonable and logical to conclude that this was caused by a shifting of the load in the truck, an occurrence which was well known to plaintiff, and not through any negligence on the part of the owner or driver of that vehicle. Since the accident could as plausibly have resulted from more than one cause, and the evidence does not justify a conclusion that it was caused solely by the negligence of defendant, rather than other factors, the doctrine of res ipsa loquitur is not applicable.
Our conclusion is that the evidence fails to show that defendants were negligent in the operation of the truck or in failing to maintain it in a safe condition, and that the doctrine of res ipsa loquitur is not applicable. Since plaintiff has failed to establish negligence on the part of the defendants, the trial judge correctly rejected his demands.
In view of the conclusions which we have reached, it is unnecessary for us to consider the additional defenses of contributory negligence or of assumption of risk which have been urged by defendants.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
FRUGÉ, J., absent.