261 So.2d 280 (1972)
Wallace LeJEUNE, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants-Appellants.
No. 3791.
Court of Appeal of Louisiana. Third Circuit.
April 19, 1972.
Rehearing Denied May 16, 1972.
*281 Landry, Watkins, Cousin & Bonin by William O. Bonin, New Iberia, for defendants-appellants.
Daniel J. McGee, Mamou, and Andrew Vidrine, Church Point, for plaintiff-appellant.
Voorhies, Labbé, Fontenot, Leonard & McGlasson by J. Winston Fontenot, Lafayette, for defendants-appellees-appellants.
Before FRUGÉ, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Wallace LeJeune instituted this suit to recover damages for personal injuries sustained by him when a drilling rig on which he was working collapsed. Defendants are: (1) Roosevelt Foreman, the major stockholder and president of Lafayette Well Service, Inc., plaintiff's employer; (2) P. C. Carr, general superintendent for Lafayette Well Service, Inc.; (3) E. J. Babineaux, a tool pusher employed by Lafayette Well Service, Inc.; and (4) Liberty Mutual Insurance Company, the liability insurer of Lafayette Well Service, Inc. Liberty Mutual also was the workmen's compensation insurer of Lafayette, and it filed an intervention in this suit seeking reimbursement of the amounts which it has paid or may pay to plaintiff as compensation benefits.
The case was tried by jury. A special verdict was returned finding that plaintiff is entitled to recover damages in the amount of $20,000.00 from defendants Carr, Babineaux and Liberty Mutual, that he is not entitled to recover from Foreman, and that Carr and Babineaux were insured by Liberty Mutual at the time of the accident. The trial judge rendered judgment in accordance with that verdict, and the judgment also granted to Liberty Mutual the relief which it sought in its petition of intervention.
Plaintiff LeJeune and defendants Carr, Babineaux and Liberty Mutual have appealed.
The principal issues presented are whether the accident which resulted in injuries to plaintiff was caused by the negligence of any of the defendants, and if so, whether said defendants, being officers or employees of the corporation which employed LeJeune, are personally liable for the damages which plaintiff sustained.
The accident occurred at about 1:30 P. M. on December 21, 1968. Lafayette Well Service, Inc., was engaged in working over oil and gas wells at that time, and it owned or operated three drilling rigs, all of which were used primarily for workover operations. One of these rigs, designated by Lafayette as "Rig No. 1," was being used on the above mentioned date to work over a depleted gas well near Branch, in Acadia Parish, Louisiana. Lafayette had been engaged in that particular workover operation for about two weeks before the accident occurred, and it had used the same drilling rig and substantially the same crew members during that two-week period.
*282 Defendant Foreman was the President and principal stockholder of Lafayette. Carr was employed by Lafayette as the company's General Superintendent, and his duties were to supervise the operation of the three drilling rigs which were owned and operated by that corporation. Babineaux was employed by Lafayette to work as a tool pusher on Rig No. 1, that being the rig on which LeJeune was working when he was injured.
Rig No. 1 was operated by three crews, of four men each, a crew consisting of a driller, two floor hands and one derrickman. The crew which was operating that rig when the accident occurred consisted of Willet Carrier (driller), Burlin and Earlyn Carrier (floor hands), and plaintiff LeJeune (derrickman). This crew, of course, was under the supervision of Babineaux, the tool pusher. LeJeune had been working for Lafayette for about ten months before he was injured, and during that entire time he had worked as a derrickman on Rig No. 1.
The derrick which was being used on this operation was portable. It was mounted on a truck or a carrier, which in this instance was backed up to the location of the well, and the derrick was raised at that point. The truck or carrier remained attached to the derrick, extending to the rear of that structure, while the re-working operations were conducted. Some "fingers" extended several feet from and in front of the derrick, and they served as racks to hold the stands of pipe as they were pulled out of the well and stacked in the derrick. A platform, known as a "monkey board," was located high in the derrick, and the member of the crew who worked as the "derrickman" stood on this platform while performing a substantial part of his duties.
One of plaintiff's responsibilities as a derrickman was to secure the pipe as it was removed from the well and stacked in the derrick, and to release the stands of pipe as they were taken from the stack and replaced in the well. While performing those duties, it was necessary for him to station himself on the "monkey board." He was on that platform when the derrick fell.
All of the pipe had been removed from the well and stacked in the derrick shortly before the accident occurred, and at the time of that accident the crew was engaged in replacing the pipe back in the well. After about 1,500 feet of pipe had been taken from the stack and replaced in the well, the derrick and the stands of pipe which remained stacked in it suddenly fell backward, or to the rear, on the truck or carrier to which it was attached. LeJeune was carried to the ground with the derrick, and he suffered severe injuries as a result of that fall.
Liberty Mutual was the insurer of Lafayette under a policy of liability insurance which included coverage for Lafayette's "executive officers." Liberty Mutual also was the workmen's compensation insurer of Lafayette, and it paid compensation benefits to plaintiff for the injury and disability which he sustained as a result of the above mentioned accident.
LeJeune instituted this suit on November 26, 1969, alleging negligence on the part of Foreman, Carr and Babineaux, and asserting that Liberty Mutual, under its "executive officer" coverage, was liable for the damages caused by the negligence of the three individual defendants. Liberty Mutual concedes that Foreman was protected from liability under the provisions of the policy, but it denies that either Carr or Babineaux were "Executive Officers" of the corporation, and it thus denied that the policy provided coverage for them.
A number of other parties were joined in this litigation and a number of pleadings were filed. Among other pleadings, a third party demand was filed by defendants Carr and Babineaux against Liberty Mutual, seeking a judgment decreeing that they were covered in the policy issued by Liberty Mutual, and demanding damages for Liberty Mutual's failure to provide a defense for them in this suit. By agreement *283 of counsel, however, these third party demands were not submitted for decision, and judgments have not been rendered on them. Those demands, therefore, are not before us on this appeal.
Defendants contend that the evidence fails to establish any actionable negligence on the part of defendants Foreman, Carr or Babineaux. Plaintiff argues that there is sufficient evidence to support the jury's finding that they were negligent, and that the verdict should not be disturbed, except that the amount of the award should be increased and defendant Foreman also should be decreed to be liable in solido with the other defendants. The record is voluminous. After carefully reviewing all of the evidence, however, we have concluded that it fails to support the jury's finding of negligence on the part of any of the defendants, and that the jury and the trial court clearly erred in decreeing Carr, Babineaux and Liberty Mutual to be liable.
Plaintiff alleges, first, that defendants were negligent in attempting the reworking job with a rig which was inadequate, in allowing the rig to become overloaded, in continuing the operation after they knew that there was an overloaded condition, and in causing and allowing the rig to fall. The record fails to support any of these allegations.
The evidence shows that Rig No. 1 had been in use for more than seven years before this accident occurred, and that it was capable of pulling at least 150,000 pounds. It had, in fact, pulled about 103,000 pounds at its prior location while LeJeune was working as derrickman on it. The weight of the pipe being pulled at the time of the accident involved here was only about 96,000 pounds, which was substantially less than the proven capacity of the rig. The record also shows that 1,500 feet of the pipe which had been stacked in the derrick had been replaced in the well, and that the weight on the derrick thus had been reduced to that extent before the derrick collapsed. The pipe had been pulled out of the well and had been stacked in the derrick at that location six times before the accident occurred, without any sign of danger.
Plaintiff testified and attaches some importance to the fact that the derrick was "home made." The record shows that it was "shop made" or specially built for Lafayette, rather than having been manufactured by a commercial producer of such rigs, but that does not constitute a showing that the rig was inadequate or that there was a defect in the design or construction which made it unsafe. The evidence, on the contrary, shows that it was safe and adequate for performing the kind of work for which it was being used.
Plaintiff also testified that the rig at times was "rough to handle," and that the tool pusher, Babineaux, had stated that this particular location for the rig was dangerous. Babineaux denied any such statement, and plaintiff has given no explanation of what he meant by the vague assertion that this rig was hard to handle. The evidence fails to support plaintiff's assertion that the location was dangerous, or that the rig was difficult to handle, or that there was any indication of a defect in the rig before the derrick fell.
On one occasion the rig was found to be leaning to one side. The evidence shows, however, that this occurred only once, at a time long prior to the accident, and that the leaning was caused by improper racking of pipe in the derrick. That condition was corrected immediately after it occurred, and there is no showing that this incident had anything to do with the accident which occurred on December 21, 1968.
The derrick was secured by rear guy lines, but there were no guy lines in the front, away from the direction of the fall. Plaintiff argues that defendants were negligent in failing to install front guy lines.
*284 The evidence does not show, however, that there was any need for front guy wires or that such lines were used ordinarily. When pipe was stacked in the derrick it normally leaned toward the front, and it was necessary only that guy wires be attached to the rear.
Earlyn Carrier, a floor hand, testified that shortly before the accident occurred he and his brother, Burlin Carrier, tightened the guy wires leading from the top of the derrick to the truck or carrier located below and to the rear of that structure. The other evidence shows that these guy wires should not have been tightened while pipe was stacked in the derrick and the lines were under tension. We think the tightening of these guy wires caused the derrick to fall. There is no evidence, however, showing that any of the defendants in this suit ordered that the wires be tightened or that they had any knowledge of the fact that they had been tightened.
The evidence shows that neither Foreman nor Carr were present at the site of these workover operations on the day of the accident. Babineaux was present, but he was in a trailer house which served as his office at the time the accident occurred, and he did not see the derrick fall. The evidence shows that he did not know that the guy lines had been tightened.
Our examination of the record fails to disclose any evidence which tends to show negligence on the part of Foreman, Carr or Babineaux. We must conclude, therefore, that the jury erred in finding that any of those defendants was negligent.
Plaintiff specially pleads the doctrine of res ipsa loquitur, contending that the accident would not have occurred except for the negligence of those who were in control of the workover operation. The trial judge felt that this doctrine was not applicable here, and he refused to instruct the jury as to res ipsa loquitur. We agree with his conclusions to that effect.
For this rule to apply, the plaintiff must establish: (1) that the instrumentality causing the accident was within defendants' actual or constructive control; and (2) that defendants possess the superior means of information as to the cause of the accident. The inference of negligence may be drawn where the circumstances lead only to the fair and reasonable conclusion that the accident was due to defendants' negligence. There must be no other reasonable or logical explanation for the occurrence of the accident. J. C. Trahan Drilling Contractor, Inc. v. Cockrell, 225 So.2d 599 (La.App. 1 Cir. 1969); Fruge v. Trahan, 194 So.2d 478 (La.App. 3 Cir. 1967).
We have already pointed out that the accident might have been, and probably was, caused by the tightening of the rear guy wires, and that defendants were not in any way responsible for tampering with those lines. There is a reasonable or logical explanation for the occurrence of the accident, therefore, other than from the negligence of defendants. The doctrine of res ipsa loquitur, therefore, is not applicable here.
Our conclusion is that the evidence does not support the verdict or finding of the jury that defendants Carr and Babineaux were negligent. We think the jury clearly or manifestly erred in reaching such a conclusion, and the judgment decreeing those defendants to be liable must be reversed.
Although we base our determination of this case on the failure of plaintiff to show that defendants were negligent, we also are convinced that there could be no recovery against defendants on the grounds alleged, even if the facts set out in the petition had been proved. Defendants were acting as agents of plaintiff's employer, Lafayette Well Service, Inc., in conducting these workover operations, and plaintiff has not alleged the breach of a duty of care owed to him by any of the defendants, individually.
*285 In Maxey v. Aetna Casualty & Surety Company, 255 So.2d 120 (La.App. 3 Cir. 1971), we said:
"We think an officer or director of a corporation owes a duty to the corporation which is separate and independent of any duty which he may owe to an employee or to a third person. The duty which he owes to the corporation may include, among other things, a duty to provide safe working conditions for employees and to exercise reasonable care in protecting the corporation from legal liability. If he fails to perform a duty owed to the corporation, he may be answerable to that corporation for the damages which it sustained because of his failure or neglect. The breach of a legal duty which a corporate officer owes exclusively to the corporation, however, whether his conduct is classified as nonfeasance, misfeasance or malfeasance, is of no concern to a third party, and it does not give rise to any cause of action in tort by the latter against the corporate officer individually. [Citations omitted.]
"The only duty which an executive officer of a corporation owes to a third person, whether he be an employee of the corporation or a complete stranger, is the same duty to exercise due care not to injure him which any person owes to another. If an injury is sustained by a third party as the result of the independent negligence of the corporate officer, or as the result of a breach of the duty which that officer, as an individual, owes to the third party, then the injured third party may have a cause of action for damages against the officer personally. See LSA-C.C. Arts. 2315 et seq. Insofar as the personal liability of the corporate officer to the third party for damages is concerned, however, it is immaterial whether his breach of duty towards the third person also constitutes a breach of duty to the corporation." [Citations omitted.]
This position was recently reiterated in Dulaney v. Fruge, 257 So.2d 827 (La.App. 3 Cir. 1972), reversing a jury verdict in favor of plaintiff.
The evidence in the instant suit fails to establish that any of the defendants breached a duty of care owed to the plaintiff, which could be considered as "independent negligence." Even if we were to assume, as suggested by plaintiff, that there was some failure to provide plaintiff with safe working conditions, this would constitute a breach of a duty owed only by these individuals to Lafayette Well Service, Inc. Plaintiff would have no right to recover for any breach of this duty, as it is one in which he has no interest, and which is not owed to him personally by any of the individual defendants herein.
For the reasons assigned, the judgment appealed from is reversed insofar as it: (1) condemns defendants P. C. Carr, E. J. Babineaux and Liberty Mutual Insurance Company to pay damages and costs of this suit to plaintiff; and (2) awards to intervenor, Liberty Mutual Insurance Company, judgment against defendants Carr and Babineaux, and against plaintiff, for the workmen's compensation benefits which said intervenor has paid or may pay to plaintiff. Judgment is hereby rendered in favor of said defendants, P. C. Carr, E. J. Babineaux and Liberty Mutual Insurance Company, rejecting plaintiff's demands against said defendants and dismissing the suit as to them at plaintiff's costs. Judgment is also rendered rejecting the demands of intervenor, Liberty Mutual Insurance Company, and dismissing its petition of intervention. The judgment appealed from is affirmed in all other respects. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed in part, and reversed in part.
*286 CULPEPPER, J., concurs and assigns written reasons.
CULPEPPER, Judge (concurring).
I agree with the result reached by the majority but do not agree entirely with the statement of law quoted from Maxey v. Aetna Casualty & Surety Company, 255 So.2d 120 (La.App.3rd Cir. 1971). In the recent case of Spillers v. Northern Assurance Company of America et al., 254 So. 2d 125 (La.App.3rd Cir. 1971), decided by a different panel of this court, I stated my view of the law as to the duty of an agent to third persons. Our Supreme Court has not yet decided these legal issues.
However, even under the law stated in the Spillers case, plaintiff cannot recover. I agree with the majority that the cause of this accident was the improper tightening of the guywires by the two floor hands. As to the defendant Foreman, president of the company, and Carr, general superintendent, there is no showing whatever that the corporation delegated to them the duty to oversee such matters. Nor does it show that they had any knowledge of the hazard.
As to the defendant Babineaux, the tool pusher in charge of this particular rig, I think the evidence does show that the corporation delegated to him the duty to protect against such hazards as the improper tightening of the guywires. However, the evidence fails to show that he had actual knowledge of the hazard, or that he should have had such knowledge. Although Babineaux had the duty, as agent of his employer, to keep the rig reasonably free of such hazards to the workmen, he was not an insurer of their safety. He was not responsible for hazards of which he had no actual or constructive knowledge.
For the reasons assigned, I concur.