Sterling **CHAMPAGNE**, as next friend and guardian ad litem of the minor Keith James Champagne

v.

The **TRAVELERS INSURANCE COMPANY** et al.

Civ. A. No. 14930.

United States District Court,
W. D. Louisiana,
Lafayette Division.

Sept. 12, 1972.

Organ & Pierce, Donald V. Organ, New Orleans, La., for plaintiff.

Landry, Watkins, Counsin & Bonin, Alfred S. Landry, New Iberia, La., for intervenor.

Davidson, Meaux, Onebane & Donohoe, John G. Torian, III, Lafayette, La., for defendants.

## JUDGMENT

PUTNAM, District Judge.

This case is before us on defendant's motion for summary judgment. Plaintiff, a Louisiana citizen, sues The Travelers Indemnity Company, a foreign corporation doing business in this state, which issued a liability policy covering the operations of plaintiff's employer, Cargill, Inc., also a foreign corporation, at its salt mine at Belle Isle, Louisiana. Suit is brought against Travelers under the Louisiana Direct Action Statute, LSA–R.S. 22:655. The policy includes coverage of executive officers, directors and stockholders of the insured.

Our jurisdiction attaches pursuant to Title 28 U.S.C.A. § 1332(a), the amount in dispute being in excess of $10,000.00.

The uncontradicted facts reveal that on or about November 12, 1968, Keith James Champagne, son of the plaintiff and a minor at the time of filing of this suit, was working as a screen house operator in the Belle Isle salt mine. During the course of his employment his right arm was severed at the shoulder when he attempted to apply wax dressing in stick form to prevent slippage of one of the conveyor belts he controlled as screen house operator.

The policy issued to Cargill by Travelers contained a provision providing liability coverage for the executive officers, directors and stockholders of the insured. Plaintiff maintains that the application of wax dressing to belts such as this by hand, using stick wax, is outmoded and obsolete and no longer employed in such operations because of the danger involved in its use; that a liquid spray is used to eliminate the necessity of workmen placing their hands and arms in close proximity to the machinery, and that a safety director should, in the exercise of ordinary care, know these facts and institute a program for employees to avoid the hazard inherent in applying dressing by hand. This is supported by the affidavit of Mr. Jacob Long, a safety consultant, who expressed the further opinion that plaintiff should have had on the job training in this work before being permitted to operate the machinery in question.

While the suit originally named some thirty-one (31) directors, stockholders and alleged executive officers as being responsible for plaintiff's injuries, the only individuals against whom any possible liability might attach are (1) Mr. C. R. Burge, engineering manager of Cargill's salt division; (2) Mr. F. Clayton Tonnemaker, assistant vice president and manager of salt operations, and (3) Mr. Leroy H. Gretzer, safety director for seven divisions of Cargill, Inc. None of these men were at the mine when the accident happened. All reside out of Louisiana and work out of the home office of Cargill in Minnesota. They knew nothing of the accident or of plaintiff's employment in the mine until sometime after the occurrence. Mr. Tonnemaker, as manager of salt operations, had employed an experienced mining engineer, Mr. Nick Nicola, a Louisiana citizen, who was in charge of the Belle Isle salt mine.

Mr. Gretzer, in his deposition, stated that as safety director he formulated safety programs for Cargill operations, including the safety program at Belle Isle. However, the direct responsibility for safety at the mine was delegated to Mr. Nicola, who reported to Gretzer from time to time. Mr. Gretzer visited the Belle Isle mine on an average of once every two or three months during the year.

Mr. Gretzer also testified that because of the type of lagging on the head pulleys and belt tighteners employed on the conveyor belt system, the belts would not ordinarily require dressing. He had no personal knowledge that the belts would be dressed, or that stick dressing was being used at the mine. (See deposition, pp. 15, 39). Additionally, he stated that the safety rules promulgated for the mine operation required the equipment to be shut down prior to any adjustments or alterations being made on any of the machinery. This requirement was thought to be sufficient to cover the situation in this case. (Deposition, p. 15).

Mr. Burge, as engineering manager of salt operations, had nothing whatsoever to do with the safety programs at the mine.

These facts are established without contradiction by the depositions of those three Cargill officers, filed in evidence by defendant in support of the motion for summary judgment.

The deposition of Keith Champagne establishes that he was instructed in the use of wax dressing by another mine employee, Mike Dartez, his immediate supervisor, who is in no sense of the word an executive officer of Cargill. Mr. Champagne also testified that he was shown how to start and stop the conveyor assembly and the machinery which controls the belt and screening mechanism by another employee, who then moved on to another job. He had only been at work for two or three weeks when the accident occurred. He saw the belt beginning to slip, and when it slowed to the point of stopping, he left the controls *in operating position* and proceeded up to the belt near the head roller, which powers the belt, and began to apply the wax by hand. He had completed the application on one

side, crossed over to the other side of the belt and was in the process of reaching under it to apply wax to the other half of the bearing surface when it began moving, drawing his arm into the head pulley and literally ripping it off at the shoulder.

It is plaintiff's contention that the executive officers of Cargill, covered under the Travelers policy, are liable to him individually for damages resulting from these injuries under the doctrine of Adams v. Fidelity and Casualty Company of New York, La.App. 1 Cir. 1958, 107 So.2d 496, writ denied.

In such cases, the plaintiff is precluded from suing his corporate employer by the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1032 et seq., but is free, under the provisions of LSA:R.S. 23:1101, to sue third parties, including co-employees, who, under the circumstances and without reference to the Compensation Act, are legally responsible for the damages resulting from his injury. Thus, suits against executive officers and directors of corporations, such as we have here, would defeat the purpose of the compensation laws, and, moreover, emasculate completely the corporate shield against individual liability for acts done by directors and officers in the performance of corporate duties, unless kept within the bounds clearly defined by state law.

The Adams rule has been the subject of considerable discussion of late. Divergent views have been expressed by the Louisiana appellate courts. In Daigle v. Cobb, La.App. 4 Cir. 1965, 175 So.2d 392 (writs refused 248 La. 363, 178 So.2d 655 (1965) with the comment "There is no error of law in the ruling complained of."), and Johnson v. Continental Insurance Company, La.App. 4 Cir. 1968, 216 So.2d 336, the Fourth Circuit after carefully analyzing the development of the rule, reached the conclusion that the law of this State was then and continues to be as expressed by the Louisiana Supreme Court in Wirth v. Albert, 1932, 174 La. 373, 141 So. 1:

"Officers and directors are merely agents of the corporation, and, except for acts of *malfeasance,* are answerable to it alone. A creditor of a corporation has no right of action against the corporation's agents for gross negligence or maladministration of corporate affairs or omission of duty." (141 So. 4. Emphasis by the Court; citations omitted.)

Another circuit in several more recent decisions, has come to grips with the problem. See: Lejeune v. Liberty Mutual Insurance Company et al., La.App. 3 Cir. 1972, 261 So.2d 280; Dulaney v. Fruge, La.App. 3 Cir. 1972, 257 So.2d 827, writ refused, 261 La. 482, 259 So.2d 921; Spillers v. Northern Assurance Co. of America, La.App. 3 Cir. 1971, 254 So.2d 125, writ refused 260 La. 288, 255 So.2d 772; and Maxey v. Aetna Casualty & Surety Company, La.App. 3 Cir. 1971, 255 So.2d 120, writ refused 260 La. 123, 255 So.2d 351. In each of these cases the court denied recovery and dismissed the suits. In those instances where writs were sought, the Supreme Court denied the applications with the statement that the results were correct, giving no indication as to its feeling with regard to the legal principles involved.

Notably, there is a divergence of opinion as to the law even among the judges of the Third Circuit, which is succinctly stated by Judge Culpepper in Spillers, supra, as follows:

"In the recent case of Mertice Maxey v. Aetna Casualty & Surety Company, et al, 255 So.2d 120 (La.App. 3 Cir. 1971), a different panel of this court (Judges Savoy, Hood and Culpepper) considered a similar action by an employee against the executive officers of the corporate employer. The majority decision in that case can be summarized as follows:

(1) The holding in certain early cases that a corporate officer is liable in tort to third parties only for acts of malfeasance and misfeasance, and not acts of nonfeasance, was rejected.

(2) Where a corporate officer owes a duty exclusively to the corporation, the breach of such a duty cannot give rise to a cause of action in tort by a third party.

(3) The duty which a corporate officer owes to a third person is the same as that owed by any person not to injure another, and it is immaterial whether the breach of such a duty to a third person also constitutes a breach of duty to the corporation.

" . . . The writer agreed with the first and second holdings listed above, but could not agree that in every situation it is immaterial whether the agent has breached a duty to his principal." 254 So.2d 128.

The *Spillers* case then cited Malone & Guerry, Studies in Louisiana Torts Law, at page 524, with reference to the Adams case, where it is stated:

" ' . . . the agent should not be held responsible to a third person for his mere failure to perform an affirmative duty toward his principal unless (a) the principal owed a duty of care toward the third person, and (b) this same duty was delegated to the agent, *who undertook its performance.* When both these conditions have been met it will be found that the agent, by failing to perform his duty, has deprived the third person of the protection to which the later was entitled and which, presumably, he would have received from the principal if the agent had not undertaken its performance . . . . ' " (Emphasis supplied. 254 So.2d at 128.)

Under this rule, the failure of the agent becomes something more than mere nonfeasance on his part, but in fact amounts to a positive interference with the third person's right to reasonable protection by the principal.

In Berry v. Aetna Casualty & Surety Company, La.App. 2 Cir. 1970, 240 So.2d 243, writ refused, 256 La. 914, 240 So.2d 374, cert. denied 401 U.S. 1005, 91 S.Ct. 1255, 28 L.Ed.2d 541 still another circuit states the law to be as follows:

"Whether the acts of an executive officer amount to malfeasance, misfeasance or nonfeasance is immaterial. Plaintiff must show negligence on the part of one or more of the defendants as provided in Louisiana Civil Code Articles 2315 and 2316, the basic authority for such claims in this State. Plaintiff must show the breach of a duty *owed to him* by the executive officer, and that the breach of such constituted a proximate cause of plaintiff's injury." (Emphasis supplied. 240 So.2d 247, 248)

Thus, the Second Circuit would seem to be in accord with the Third Circuit majority as expressed in *Maxey,* supra.

In Lemmons v. Zurich Insurance Company (5 Cir. 1968), 403 F.2d 512, the rule of the Adams case as stated by Judge Culpepper in *Spillers,* supra, was adopted and applied.

The courts are in agreement on one point, at least, that being that the question of an executive officer's liability is a matter of law, and where the material facts are not contradicted, summary judgment is proper. Lemmons v. Zurich Insurance Company, supra, Daigle v. Cobb, supra, Spillers v. Northern Assurance Company, supra.

Time and a crowded docket do not permit a further extension of our discussion of the law on this subject. However, it is abundantly clear that plaintiff cannot recover against the defendants in the instant case under any of the rules stated above. Mr. Gretzer, who was responsible for formulation of safety regulations in seven divisions of the Cargill Corporation, knew nothing of the practice employed at the Belle Isle mine of applying "stick" dressing to the conveyor belts operated by plaintiff. He was not present at the mine, and did not know plaintiff had been employed or that he was not properly instructed in his work if that was indeed the case. Further, his own safety regulations which required shutting down the conveyor system to apply dressing or make other adjustments to the belts, would

have prevented this unfortunate occurrence had they been followed.

The fact that there was a better method of applying dressing to such belts as set out in the affidavit of plaintiff's expert, does not put at issue any of the facts material to an executive officer's liability under any view of the law as outlined in this opinion. Keith Champagne's remedy, if he has one under LSA–R.S. 23:1101, is not against the defendants named in his complaint, who did not breach a legal duty owed to him as individuals and who had no knowledge whatsoever of the fact of his employment or of the practice of applying dressing to conveyor belts by hand.

Defendants' motion for summary judgment is sustained. Formal judgment will be prepared by counsel for defendants for signature by the Court pursuant to our Rule 9(e). Entry of judgment to follow signing and filing thereof.

It is so ordered.