257 So.2d 827 (1972)
Burrell DULANEY, Plaintiff-Appellee,
v.
Luke FRUGE et al., Defendants-Appellants.
No. 3723.
Court of Appeal of Louisiana, Third Circuit.
January 21, 1972.
Rehearings Denied March 1, 1972.
Writs Refused April 11, 1972.
*828 Plauche, Smith & Hebert, by A. Lane Plauche, Lon Tyndal, Lake Charles, for defendants-appellants.
Russell T. Tritico, Lake Charles, for plaintiff-appellee.
Garrett, Ryland & Downs, by James C. Downs, Alexandria, for intervenor-appellee.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff, Burrell Dulaney sustained serious injuries in an oil well fire which erupted near Oberlin, Louisiana on August 17, 1968. As a result he initiated litigation which, following considerable legal maneuverings, the involvement of a number of parties, and a prior mistrial, culminated in the judgment herein appealed. Essentially plaintiff sued Luke Fruge, president and major shareholder of Luke Fruge, Inc., plaintiff's employer, as an executive officer thereof and Mid-Continent Casualty Company, liability insurer of Luke Fruge, Inc. and of its executive officers. Coal Operators Casualty Company, workmen's compensation carrier of Luke Fruge, Inc., intervened for the amounts paid to or on behalf of plaintiff, i. e., $25,000.00 in medical payments and $35.00 per week, from the date of the accident, in compensation payments.
The jury returned a substantial verdict in favor of plaintiff and the two defendants applied for a new trial and for a remittitur. The former request was denied but the latter was granted, the final judgment being in favor of plaintiff and against Luke Fruge and Mid-Continent and allowing Coal Operators the full amount of its demand from the proceeds of the judgment. Luke Fruge and Mid-Continent appealed that judgment to this court.
The facts show that Luke Fruge, Inc. is a corporation engaged in doing oilfield work, principally involving workover operations. Plaintiff, a man in his middle fifties, had spent nearly all of his adult life working in the oilfields and joined Luke Fruge, Inc. about three years before the accident as an experienced and well seasoned employee, with good connections in the oil business. As a consequence plaintiff's duties with Luke Fruge, Inc. consisted not only of exercising supervisory powers on the actual job sites, but also of soliciting added business for his employer. In this latter capacity he frequently obtained jobs from H. L. Hunt, whose representatives were in the habit of contacting plaintiff directly when they desired the services of Luke Fruge, Inc., and it was in this manner that the workover job in question was given to plaintiff's employer. Defendant Luke Fruge was out of the state at that time and did not even know that his corporation had been awarded the contract until after the accident occurred.
Mr. W. E. Gean, a representative of H. L. Hunt, who owned the well, contacted plaintiff regarding the project, and a few *829 days before the accident he and plaintiff went to inspect the site. At that time Mr. Gean gave plaintiff instructions regarding what was to be done and how, but at the trial plaintiff and he differed in their accounts of what was said. The differences, however, are irrelevant in view of our conclusion herein.
On the morning of August 17, plaintiff and his crew went to the well site and began to rig up. Plaintiff then left the site with instructions to his driller, Jesse Picard, to begin circulating the well, a process whereby the completion fluid in the well was to be salvaged, and the well was to be made safe to work on. The well was first bled, i. e. the trapped gases were allowed to escape, and then a line was hooked up whereby the completion fluid, in this case distillate, would be pumped into an open mud tank. The operation was thus underway when plaintiff returned to the scene, observed the manner in which his instructions were being carried out, and approved it.
A few minutes later the diesel engine being used to pump the fluid began "reviving up", or increasing its speed, apparently due to the presence of gases in the clearing which were being drawn into the air intake of the engine. Picard then stopped the engine by shutting off the fuel supply, but upon stopping, the engine emitted either sparks or a jet of fire. This in turn ignited the gases which were trapped in the clearing wherein the well was located and the entire area suddenly became an inferno of fire which severely burned all those present.
Paragraph three of plaintiff's fourth and last amending petition constitutes his allegations of negligence on the part of defendant, Luke Fruge, it alleging that he was personally negligent in the following particulars:
a) In failing to provide equipment suitable for the operation which was being conducted and equipment that would have adequate safety devices.
b) In failing to maintain the equipment properly.
c) In failing to see that safety inspections were made of the equipment when he knew or should have known the condition under which the equipment would operate.
d) In failing to inspect the site where operations were being conducted to determine and eliminate dangerous conditions.
e) In failing to properly inform his personnel as to the particular hazards of the job wherein the accident occurred and in failing to provide safety personnel to oversee the operation.
f) In failing to carry out the duties of his position as the principal executive officer and sole operator thereof in a manner incumbent with the responsibilities of his position and in doing what he should not have done and in not doing what he should have done.
g) In failing to set up adequate and routine safety procedures and in failing to keep himself informed of whether or not the methods being utilized by his personnel were safe and whether or not safety equipment which could reduce the risks involved in his type operation would be utilized and in failing to delegate someone sufficiently skilled in this field to assume the responsibility for him.
h) In failing to set up and prescribe routine safety programs and to familiarize himself with developments in this field which might reduce the risks involved in his operation.
We find these allegations of negligence to be in substance not unlike those[1] asserted *830 in the case of Maxey v. Aetna Casualty and Surety Company et al., 255 So.2d 120; writ refused 260 La. 123, 255 So.2d 351. Therein we set out the law regarding the personal liability of corporate officers to injured employees of the corporation to be as follows:
"We think an officer or director of a corporation owes a duty to the corporation which is separate and independent of any duty which he may owe to an employee or to a third person. The duty which he owes to the corporation may include, among other things, a duty to provide safe working conditions for employees and to exercise reasonable care in protecting the corporation from legal liability. If he fails to perform a duty owed to the corporation, he may be answerable to that corporation for the damages which it sustained because of his failure or neglect. The breach of a legal duty which a corporate officer owes exclusively to the corporation, however, whether his conduct is classified as nonfeasance, misfeasance or malfeasance, is of no concern to a third party, and it does not give rise to any cause of action in tort by the latter against the corporate officer individually. LSA-C.C. Arts. 2315, 2316; Sampson v. Schultz, 242 So.2d 363 (La.App. 2 Cir. 1970); Berry v. Aetna Casualty & Surety Company, supra; Adams v. Fidelity & Casualty Company of New York, 107 So.2d 496 (La.App. 1 Cir. 1958); 19 C.J.S. Corporations § 846, page 273; 19 Am.Jur.2d Corporations, Sec. 1388, page 784.
The only duty which an executive officer of a corporation owes to a third person, whether he be an employee of the corporation or a complete stranger, is the same duty to exercise due care not to injure him which any person owes to another. If an injury is sustained by a third party as the result of the independent negligence of the corporate officer, or as the result of a breach of the duty which that officer, as an individual, owes to the third party, then the injured third party may have a cause of action for damages against the officer personally. See LSA-C.C. Arts. 2315 et seq. Insofar as the personal liability of the corporate officer to the third party for damages is concerned, however, it is immaterial whether his breach of duty towards the third person also constitutes a breach of duty to the corporation. Sampson v. Schultz, supra; Berry v. Aetna Casualty & Surety Company, supra; Adams v. Fidelity & Casualty Company of New York, supra.
Plaintiff alleges as the basis for his demands in the instant suit that the defendant corporate officers were negligent in several particulars. A careful examination of plaintiff's petition convinces us, however, that each of these alleged acts of negligence, if proved, would constitute a breach of duty which the officers owed only to the corporation. We find no allegation in the petition to the effect that the defendants breached a legal duty which they, as individuals, owed to plaintiff."
In the case at bar plaintiff sought to show that the diesel engine being used to pump the fluid was defective and unsafe in that it did not have certain equipment which might have prevented the escape of *831 sparks or fire from its exhaust system. (The equipment that it did have was standard for engines of its type.) Additionally he offered considerable testimony to the effect that defendant Luke Fruge had failed to set up and administer a safety program for Luke Fruge, Inc., and that therefore the employees of the latter were unprepared to recognize the danger that existed or to deal with it had they recognized it.
Assuming arguendo, and without so holding, that the evidence conformed to plaintiff's allegations of negligence, there has been no proof of his right to recover from defendant personally. Even if defendant Fruge did fail to provide proper safety procedures and safe equipment, his failures would constitute, in light of Maxey, supra, a breach of duties owed exclusively to the corporation and not to its employees. There being no violation of a duty owed to plaintiff, he cannot recover from defendant Fruge personally and his proper remedy lies in asserting, as he has done, his workmen's compensation rights against his corporate employer, Luke Fruge, Inc.
Accordingly we conclude that the jury in this case committed a manifest error of law in holding defendants liable to plaintiff and we are therefore under an obligation to overturn their verdict.
For the above and foregoing reasons the judgment of the district court is reversed and judgment is hereby rendered dismissing plaintiff's suit as well as that of intervenor, Coal Operators Casualty Company.
Costs in this and in the trial court are assessed to plaintiff.
Reversed and rendered.
CULPEPPER, Judge (concurring).
I concur with the result but do not agree entirely with the statement of law quoted from Maxey v. Aetna Casualty & Surety Company, 255 So.2d 120 (La.App., 3rd Cir. 1971). In the Maxey case, our Supreme Court denied writs for the reason "The result is correct", 260 La. 123, 255 So.2d 351, which I construe to mean that our highest court may not agree completely with the law stated in Maxey.
In the recent case of Spillars v. Northern Assurance Company of America et al., La.App., 254 So.2d 125 (3rd Cir. 1971), I stated my view of the law as to the duty of an agent to third persons. Our Supreme Court has now denied writs in Spillars, again for the reason, "The result is correct," 260 La. 288, 255 So.2d 772. Hence, we do not yet have an expression from our highest court on these issues.
I will simply refer the reader to the decision in Spillars for a statement of my views.
For the reasons assigned, I respectfully concur in the majority decision.
NOTES
[1] "A. Defendants failed to furnish plaintiff a safe place to work or to furnish equipment which should have been furnished to minimize the hazardous working conditions.

B. Defendants failed to construct any positive stops, vertical posts, or other protective railing to prevent slabs which fall from the carriage from forcibly striking the offbearer.
C. Defendants failed to provide the sawyer with an unobstructed view of the off bearer.
D. Defendants failed to instigate procedures for culling crooked logs or otherwise processing these more carefully than straight logs.
E. Defendants failed to install modern equipment which would automatically hoist slabs from the carriage to the roller bed without dropping them immediately next to the offbearer.
F. Defendants failed to furnish protective railing around the roller bed motors thus allowing plaintiff to be pressed against said motors.
G. Defendants failed to instigate safety procedures which would insure that the carriage was clear prior to the sawyer reversing it for another cut."