FRUGÉ, Judge.
This suit was originally instituted against five individual employees of Olin Corporation in a direct ascending line of supervision from the decedent’s immediate foreman to the plant manager. A suit was also instituted against Insurance Company of North America as the alleged insurer of the five named defendants. This suit alleged that the five individuals were executive officers, directors, stockholders, supervisory personnel, and employees of Olin Corporation and further purported to name other such executive officers, directors, stockholders, supervisory person *324 nel and employees who were presently unknown to the plaintiff. The five individual defendants named in the original petition entered an appearance in the form of a general denial with specific allegations of contributory negligence on the part of the deceased as án affirmative defense. Subsequently, defendants filed a peremptory exception of no cause of action, a motion for judgment on the pleadings, and a motion to strike. The trial court sustained the peremptory exception of no cause of action, but permitted the plaintiff 45 days within which to amend her petition if she could by then state a cause of action against the original defendant. On June 5, 1972, petitioner filed a first supplemental and amending petition. The most significant distinction between the two is that for the first time, a co-employee of the deceased, Dwight Hazel, was made a defendant to this suit. Paragraph 12 of the petition was amended to allege that Dwight D. Hazel commenced bagging operations at a time when, from prior routine and usual operating procedures, the defendant, Dwight D. Hazel knew, or should have known, that Victor L. Fontenot would be in a position of danger inside the tank. At this stage of the pleadings, all defendants joined in a motion for summary judgment. They further re-urged the motion to strike numerous allegations of the plaintiff which they alleged had failed to state a cause of action in the first instance. No exception of no cause of action was filed by defendant, Dwight Hazel, and the cause against him is pending in the trial court. At the last hearing on this case, the trial court stated that on the basis of Maxey v. Aetna Casualty & Surety Company, 255 So.2d 120 (La.App. 3rd Cir., 1971), the exception of no cause of action would be sustained. The effect of this ruling was to render moot the motion for summary judgment and the motion to strike as to all defendants except Dwight Hazel and defendant Insurance Company of North America.
Mrs. Fontenot appealed the trial court’s sustaining the exception of no cause of action. The defendant, Insurance Company of North America, argues that the trial judge was correct in sustaining the exception of no cause of action; that the trial judge erred in failing to grant all defendants’ motion for summary judgment predicated on the doctrine of assumption of risk, and in failing to grant the motion to strike on behalf of Dwight Hazel and the Insurance Company of North America. However, defendant-appellee, Insurance Company of North America, neither appealed nor answered the appeal in this proceeding.
We are aware of a similar case in which under similar facts a court of appeal considered a motion for summary judgment on the appeal of a judgment granting an exception of no cause of action. Roloff v. Liberty Mutual Insurance Company, 191 So. 2d 901 (La.App. 4th Cir., 1966). This circuit has followed the rule that one must either appeal or answer the appeal before he can request that the trial court judgment be revised, modified, set aside, or reversed by this court. McDonald v. Grande Corporation, 148 So.2d 441 (La.App. 3rd Cir., 1962). Accordingly, only Mrs. Fontenot’s appeal from the granting of defendants’ exception of no cause of action is before us.
For the purpose of an exception of no cause of action, the allegations of the plaintiff’s petition must be taken as true. Every reasonable hypothesis of facts admissible under the pleadings must be considered. Poynter v. Fidelity & Casualty Co. of New York, 140 So.2d 42 (La.App. 3rd Cir., 1962). The pertinent allegations of Mrs. Fontenot’s amended petition follow:
“9. That on July 6, 1971, plaintiff’s husband, Victor L. Fontenot, among others, was employed by Olin Corporation; the said Victor L. Fontenot was employed as a conveyor operator and was, at the time, engaged in his usual operating procedures in connection with the starting up of the conveyor belts and unclogging the surge bins and otherwise preparing to start bagging operations of sodium nitrate at the plant site of Olin Corporation, near Lake Charles, *325 Louisiana, and the accident hereinafter set forth happened while said work was in progress.
“10. On information and belief, plaintiff alleges that the aforesaid work of Victor L. Fontenot was part of his job as conveyor operator, and that the said Olin Corporation delegated unto the individual defendants named herein the duty and responsibility of providing the supervision, safety rules, and instructions on said work.
“11. On information and belief, plaintiff alleges that the defendants, JOHN H. LOWERY, SR., JAMES H. HEARD, HOWARD C. HOOPER, HARVEY Mc-ILVAINE, FRED R. TALBOT, and DWIGHT D. HAZELL, were the executive officers and/or supervisory employees and/or employees on said project, who had, among other things, the following responsibilities and duties delegated to them by their employer:
A. To witness and approve all tests and operations;
B. To inspect, approve, and supervise the work of Victor L. Fontenot and his co-employees;
C. To see that proper safety rules were adopted, promulgated and enforced;
D. To see that Victor L. Fontenot and his co-employees performed their work in a proper, safe way, and in a workmanlike manner;
E. To see that Victor L. Fontenot and his co-employees used safe and sound principles and practices in the work at hand;
F. To approve the manner, equipment and methods used in performing the work where hazards were involved ;
G. To make the final decisions on any questions regarding the manner and method of operations, practices and principles;
H. To plan all work which took into account the tools, equipment, work force, safety procedures and practices to be used and any hazards which might be encounted;
I. To make certain that all employees, including Victor L. Fontenot, were in positions of safety before engaging or starting the machinery and particularly the bagging machine.
“11 (A). On information and belief, plaintiff alleges that not only did the aforesaid defendants have the responsibilities and duties delegated to them by their employer as set forth above, but that said defendants did in fact undertake to instruct and indoctrinate Victor L. Fontenot in connection with the safety rules and instructions of their employer, Olin Corporation, but in their undertaking, said defendants failed to indoctrinate and instruct Victor L. Fontenot with reference to the applicable safety rule pertaining to ‘Safe practices and procedures for entering tanks or vessels’.
“12. That on or about July 6, 1971, the said Victor L. Fontenot was in the process of inspecting and/or cleaning and/or unclogging the sodium nitrate tank in preparation for the commencement of bagging operations at the sodium nitrate surge bin. Thereafter, without any warning whatsoever, and while the decedent, Victor L. Fon-tenot, was engaged in his usual operating procedures, the sodium nitrate bagging unit was engaged and bagging operations were commenced by the said defendant, DWIGHT D. HAZELL. That the bagging operations were commenced at a time when from prior routine and usual operating procedures, the defendant, DWIGHT D. HAZELL, knew or should have known that Victor L. Fontenot would be in a position of danger inside the tank. When the bagging unit commenced to mechanically operate, Victor L. Fontenot was caused to fall in the tank and die of asphyxia and aspiration, on July 6, 1971.
*326 "13. On information and belief, plaintiff alleges that sometime prior to the accident of July 6, 1971, defendants, JOHN H. LOWERY, SR., JAMES H. HEARD, HOWARD C. HOOPER, HARVEY Mc-ILVAINE, FRED R. TALBOT, and DWIGHT D. HAZELL, and/or the supervisory personnel or operational employees of Olin Corporation, whose identities are now unknown, had been delegated the responsibility and duty of establishing safe procedures and practices for entering tanks by their employer and owed a duty to Victor L. Fontenot and his co-workers to establish safe procedures and practices relative to the work being conducted at the time of this accident; that they knew or should have known of the safe practices and procedures for entering tanks; that the said defendants and/or the aforesaid supervisory personnel or operational employees knew and were well acquainted with the job routinely performed by Victor L. Fontenot and the usual operating procedures at the sodium nitrate tank and were familiar, or should have been familiar, with the operations being conducted by Victor L. Fontenot and his co-employees at the time of the accident.
“14. That the said defendants, JOHN H. LOWERY, SR., JAMES H. HEARD, HOWARD C. HOOPER, HARVEY Mc-JLVAINE, FRED R. TALBOT, and DWIGHT D. HAZELL, and/or the supervisory personnel or operational employees of Olin Corporation, whose identities are now unknown, negligently failed to inform and indoctrinate Victor L. Fon-tenot and his co-employees working on said sodium nitrate tank of the safe practices and procedures for entering tanks and negligently failed to enforce applicable safety rules.
“15. In addition to the acts of negligence alleged hereinabove, plaintiff alleges that the said accident, death, and resulting damages were caused solely by the individual, joint, concurrent and combined negligence of all defendants herein as follows:
A. In failing to instruct and indoctrinate the deceased, Victor L. Fon-tenot, and the crew performing the work about the safe practices and procedures for tank entering;
B. In failing to properly supervise the work being performed;
C. In failing to take safety precautions to prevent the accident described herein;
D. In failing to conduct their operations in a safe manner so as not to create an unsafe place to work for the decedent, Victor L. Fontenot;
E. In failing to enforce applicable safety rules, practices and procedures ;
F. In failing to warn the deceased, Victor L. Fontenot, of the dangers and that the sodium nitrate unit was being placed in operation;
G. In commencing the mechanical operation of the bagging machine at the surge bin when they knew or should have known that the deceased, Victor L. Fontenot, may have been inside of the tank in a position of danger.
H. In the alternative, should this Honorable Court find that Victor L. Fontenot was instructed by anyone not to enter inside said surge bin or tank, which is at all times denied, then plaintiff alleges that defendants were negligent, in addition to the above particulars, in the following manners:
(a) In failing to close the manhole opening and remove the ja-cob’s ladder from the top of said bin or tank;
(b) In assigning Victor L. Fon-tenot the duties of keeping the sodium nitrate flowing to the bagging machine, which could not be *327 accomplished after a three-day-work stoppage and resulting hardening of the sodium nitrate, without entering the surge bin or tank to loosen the product.”
Counsel for the defendants argues that plaintiff’s suit against defendants is based only on their being line supervisors of Olin Corporation; that they had nothing to do with the accident in question. He contends that: “It is quite obvious that a corporation can act only through its human officers, directors, shareholders and employees. When one files a 'shotgun suit’ against every supervisory employee known to him and others who remain ‘unknown’, as in this case, the effect is obviously a suit against the corporation itself.” He further contends that the plaintiff’s petition in effect admits “that the alleged obligations were corporate obligations owed to the deceased and that the defendants’ alleged participation was only by virtue of their relationship to the corporation and not by virtue of any independent relationship to the deceased.” Finally, he argues that the allegations in Mrs. Fontenot’s petition are not materially different than those in two cases in which we found that the plaintiff had not shown elements of an action sufficient to justify recovery. Maxey v. Aetna Casualty and Surety Company, 255 So.2d 120 (La.App. 3rd Cir., 1971), and Dulaney v. Fruge, 257 So.2d 827 (La.App. 3rd Cir., 1972).
Plaintiff’s attorney characterizes Maxey and Dulaney as attempts by the plaintiffs therein to create a new species of liability without fault and distinguishes this case as one based on fault. He contends that the plaintiff’s petition “reveals allegations of a duty, including delegated responsibilities, as well as an actual undertaking to perform these duties, and a failure to perform these duties or properly carry out the undertakings. In addition, knowledge by defendants of the dangerous condition that existed and their failure to act pursuant to their duties is alleged. Certainly, if these thorough allegations are taken as true, as they must be for trial of the exception, the exception should have been denied.”
Adams v. Fidelity and Casualty Company of New York, 107 So.2d 496 (La.App. 1st Cir., 1958), established that in cases such as this one “the fundamental and proper method of approach” is “to inquire whether the director, officer, or agent has failed to perform some duty which he owed to the person claiming to be aggrieved, and if so, it matters not whether the breach is of omission or commission.” Adams, supra, at 506. The petition in Maxey v. Aetna Casualty & Surety Company, 255 So.2d 120 (La.App. 3rd Cir., 1971), alleged that the executive officers there had failed to provide safe working conditions and procedures. The majority there held that “these alleged acts of negligence, if proved, would constitute a breach of duty which the officers owed only to the corporation.” The majority found that the duty of an officer to the corporation is separate and distinct from the duty he owes to an employee, but implied that the two may coexist. The majority stated that “[t]he only duty which an executive officer of a corporation owes to a third person, whether he be an employee of the corporation or a complete stranger, is the same duty to exercise due care not to injure him which any person owes to another.”
The concurring opinion agreed that plaintiff had failed to state a cause of action, but rested its conclusion on a different statement of law. This view, supported by Professor Malone, predicates liability for the failure to perform an affirmative duty toward the corporate employer upon two conditions “(a) the principle owed a duty of care toward the third person, and (b) this same duty was delegated to the agent, who undertook its performance.”
Mr. Maxey’s petition alleged that the executive officers were negligent in failing to provide plaintiff a safe place to work and to install certain safety devices. Maxey later amended his petition to allege that the officers had knowledge of the hazard and *328 the power to remove it. The concurring opinion found that there was no cause of action stated because “neither of plaintiffs’ petitions allege that the duty owed by the corporation to the decedent to furnish safe working conditions was delegated to these defendant executive officers nor that they undertook the performance of this duty.”
In Spillers v. Northern Assurance Company of America, 254 So.2d 125 (La.App. 3rd Cir., 1971), a plaintiff’s claim against an executive officer was again denied because it was not shown that the executive officer in question had been delegated or had undertaken the duty of supervising the construction. In Dulaney v. Fruge, the plaintiff alleged that the executive officer had failed to provide safe working conditions, equipment and procedures. He also alleged that the executive officer was negligent in failing to inspect the site and eliminate dangerous conditions and in failing to inform his personnel of the particular hazards of the job. In Dulaney, we held that the allegations were “in substance not unlike those asserted in the case of Maxey v. Aetna Casualty and Surety Company et al., 255 So.2d 120 . . .” The majority in Dulaney adopted the rationale of the majority in Maxey and went on to state:
“Assuming arguendo, and without so holding, that the evidence conformed to plaintiff’s allegations of negligence, there has been no proof of his right to recover from defendant personally. Even if defendant Fruge did fail to provide proper safety procedures and safe equipment, his failures would constitute, in light of Maxey, supra, a breach of duties owed exclusively to the corporation and not to its employees. There being no violation of a duty owed to plaintiff, he cannot recover from defendant Fruge personally and his proper remedy lies in asserting, as he has done, his workmen’s compensation rights against his corporate employer, Luke Fruge, Inc.
“Accordingly we conclude that the jury in this case committed a manifest error of law in holding defendants, liable to plaintiff and we are therefore under an obligation to overturn their verdict.”
Dulaney v. Fruge, 257 So.2d 827, 831 (La.App. 3rd Cir., 1972).
The allegations of fault in this case are substantially like those in Maxey and Du-laney, in that they allege the failure of defendant executive officers to (1) provide safe working conditions and procedure, (2) inspect and supervise the job, and (3) inform Mr. Fontenot of the hazards of his job and the procedures for avoiding those hazards. On the basis of the majority opinions in these two cases, we can not say that the trial court erred in sustaining the exceptions of no cause of action.
However, counsel for plaintiff skillfully framed his petition to allege that (1) the duty of providing supervision, safety rules, and instructions on the work involved was delegated to defendant executive officers by Olin Corporation; (2) they knew or should have known both that Fonte-not’s job entailed entering the tanks and of the safe practices for entering those tanks; (3) they undertook to fulfill this duty but (4) failed to instruct Mr. Fontenot as to the safe practices and procedures for entering tanks or vessels and of the danger involved. These allegations are sufficient to state a cause of action under the theory of law espoused in the concurring opinions in Maxey and Dulaney and relied on by the majority in Spillers v. Northern Assurance Company of America, 254 So.2d 125 (La.App. 3rd Cir., 1971), and Canter v. Koehring Company, 267 So.2d 270 (La.App. 3rd Cir., 1972). In order to state a cause of action under this interpretation of Adams v. Fidelity & Casualty Company of New York, 107 So.2d 496 (La.App. 1st Cir., 1958), the plaintiff must first allege that (1) the employer owed a duty of care toward the employee, and (2) this same duty was delegated to the defendant officer or agent, who undertook its performance. Without these allegations, the plaintiff has no cause of action. Adams also required *329 that the officer or agent have knowledge of the hazard.
In Canter v. Koehring Company, 267 So. 2d 270 (La.App. 3rd Cir., 1972), the plaintiff was denied recovery against certain engineers because they had not been delegated the duty of calculating the total weight of vessels which crushed the plaintiff’s husband and father when cranes supporting them collapsed. In his dissent in this case, the author of Dulaney v. Fruge, 257 So.2d 827 (La.App. 3rd Cir., 1972) clarified the majority opinion in that case as follows:
“In Dulaney v. Fruge, supra, written by the author of this dissenting opinion, plaintiff alleged that the defendant, president of his corporate employer, had failed to provide proper safety procedures and safe equipment. However, the evidence produced was barren of any proof that defendant owed any such responsibility to the plaintiff under the circumstances of that case. The evidence failed to indicate that any formal or tacit delegation of responsibility had been delegated by the corporation to the defendant, Fruge. Dulaney further held that there had been no showing that the equipment provided by the corporate employer was, in fact, unsafe, as it was equipped with the standard accessories. Additionally, as we stated, the defendant, at the time of the accident, ivas out of the state and unaware that the job in question was being performed or of what equipment was being used. Nevertheless, the opinion did contain a statement, perhaps misleading, that:
‘Even if defendant Fruge did fail to provide proper safety procedures and safe equipment, his failures would constitute, in light of Maxey, supra, a breach of duties owed exclusively to the corporation and not to its employees.’

"Under certain circumstances, the failure of an officer or agent to furnish safe equipment may violate a duty owed to both his employer and third parties, and therefore the statement quoted above from Dulaney applied to the facts of that-, case, but was in no wise intended for gen-. eral application in all cases of this nature.

“Had the plaintiff in Fruge, supra,' shown that the defendant-president had been delegated the responsibility to provide him zvith certain safe equipment, or that he otherzvise personally undertook that obligation and failed to perform it prudently, then plaintiff would have pre--sented a basis for recovery, assuming, which we could not do in Dulaney v. Fruge, that the plaintiff himself was. free of any contributory negligence.” (Emphasis added.)
Mrs. Fontenot’s petition attempts to al-; lege every element of a cause of action. Olin Corporation’s duty to provide safe working conditions and inform its employees of any hazards in their jobs can be inferred from the existence of the employer-employee relationship. It is also alleged that the defendant officers and agents were delegated these duties and undertook to perform them but failed to do so. Causation was alleged as it must be in all negligence actions. However, plaintiff has not alleged knowledge of a specific hazard. She alleges only that the defendants “knew and were well acquainted with the job routinely performed by Victor L. Fontenot and the usual operating procedures at the sodium nitrate tank and were familiar, or should have been familiar, with the operations being conducted by Victor L. Fontenot and his co-employees at the time of the accident.” Plaintiff has thus alleged no more knowledge on the part of defendants than any supervisor would have of the functions performed by those under his authority. His lack of allegations that the routine itself was dangerous enough to put the defendants on notice of any hazards which threatened Fontenot and his failure to allege specific hazard or danger of which the defendants knew or should have known, points up his failure to attribute fault to defendants. Their only *330 misfortune is that they were the superiors of the plaintiff’s husband when an accident befell him during the routine execution of his job. Plaintiff has failed to allege any negligence whatsoever on the part of the defendants before us on this appeal and, therefore, have no cause of action.
’ For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
MILLER, J., dissents and assigns written reasons.